641 F.2d 90
 106 L.R.R.M. (BNA) 2644, 90 Lab.Cas. P 12,606,
1980-81 Trade Cases 63,851
 CONSOLIDATED EXPRESS, INC., Appellant,
v.
NEW YORK SHIPPING ASSOCIATION, INC.; Sealand Service, Inc.;
Seatrain Lines, Inc.; International Longshoremen's
Association, AFL-CIO; International Terminal Operating Co.,
Inc.; John M. McGrath Corp.; Pittston Stevedoring Corp.;
United Terminals Corp.; Universal Maritime Services Corp., Appellees.
and
TWIN EXPRESS, INC., Appellant,
v.
NEW YORK SHIPPING ASSOCIATION, INC.; Sealand Service, Inc.;
International Longshoremen's Association, AFL-CIO;
International Terminal Operating Co., Inc.; John M. McGrath
Corp.; Pittston Stevedoring Corp.; United Terminals Corp.;
Universal Maritime Services Corp., Appellees.
 Nos. 78-1529, 78-1530.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 20, 1981.
Opinion on Remand from the Supreme Court of the U. S. Filed
Feb. 13, 1981.
As Amended Feb. 19, 1981.
 
 John A. Ridley, Crummy, Del Deo, Dolan & Purcell, Newark, N. J., Richard A. Whiting (argued), Ellen M. McNamara, Clifford G. Holderness, Steptoe & Johnson, Washington, D. C., for Consolidated Express, Inc. and Twin Express, Inc.
 Jeffrey Reiner, Meyner, Landis & Verdon, Newark, N. J., James W. B. Benkard (Argued), Davis Polk & Wardwell, New York City, for Sea-Land Service, Inc.
 Thomas W. Gleason, New York City, for International Longshoremen's Association, AFL-CIO; Ernest L. Mathews, Jr., New York City (Argued), of counsel.
 Michael S. Waters, Carpenter, Bennett & Morrissey, Newark, N. J., C. P. Lambos, Donato Caruso (Argued), Lorenz, Finn, Giardino & Lambos, New York City, for New York Shipping Association, Inc., International Terminal Operating Co., Inc., John W. McGrath Corp., Pittston Stevedoring Corp. and Universal Maritime Service Corp.
 Before SEITZ, C. J., and GIBBONS and WEIS, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 We deal here with the proper course to be followed in complying with the mandate of the Supreme Court vacating our prior judgment and remanding an appeal to us for further consideration in light of NLRB v. International Longshoremen's Ass'n, 447 U.S. 490, 100 S.Ct. 2305, 65 L.Ed.2d 289 (1980). Our earlier decision is Consolidated Express, Inc. v. New York Shipping Ass'n, 602 F.2d 494 (3d Cir. 1979). It is one of a series of appellate decisions growing out of the adoption in 1969 of a collective bargaining agreement between the International Longshoremen's Association (ILA) and the New York Shipping Association (NYSA), a bargaining representative, containing Rules on Containers. The history of enforcement of those Rules against off-pier freight consolidators is set forth in detail both in the Supreme Court's opinion and in our earlier opinion, and need not be repeated here.
 
 
 2
 The appeal is before us in an interlocutory stage because the trial court, having decided several legal issues reflected in an order denying partial summary judgment, concluded that the order involved controlling questions of law as to which there is a substantial ground for difference of opinion, and included the formal statement required by 28 U.S.C. § 1292(b). This court permitted the appeal, and we considered two counts of complaints filed by Consolidated Express, Inc. (Conex) and Twin Express, Inc. (Twin), common carriers engaged in the business of consolidating less than container load cargo for shipment between Puerto Rico and the Port of New York. The defendants are the ILA, a number of stevedore contractors, and two vessel owners engaged in common carriage by water between Puerto Rico and the Port of New York. Count I of the complaint seeks treble damages pursuant to section 4 of the Clayton Act, 15 U.S.C. § 15, for injury to the business or property of Conex and Twin resulting from enforcement against them of the Rules on Containers, on the theory that those rules constituted a group boycott in violation of sections 1 and 3 of the Sherman Act. Count III charges that the ILA in enforcing the Rules on Containers committed unfair labor practices in violation of section 8(b)(4)(ii)(B) of the Labor Management Relations Act, 29 U.S.C. § 158(b)(4)(ii)(B), and seeks damages for injury to their business or property under section 303(b) of that act, 29 U.S.C. § 187(b). We addressed the two counts separately, and dealt separately with a number of legal claims and defenses raised by the parties, only one of which is called into question by the Supreme Court's mandate.
 
 
 3
 When the case was before the district court, 452 F.Supp. 1024, and before us, the plaintiffs Conex and Twin had already challenged the legality of the Rules on Containers by filing unfair labor charges with the National Labor Relations Board (NLRB or Board). In a consolidated hearing the Board held that the Rules violated section 8(e) of the act and that the ILA's actions in enforcing them were unfair labor practices. It entered an appropriate cease and desist order, Consolidated Express, Inc., 221 N.L.R.B. No. 144 (1975), and both the NYSA and the ILA petitioned for review to the United States Court of Appeals for the Second Circuit. That court enforced the Board's order. International Longshoremen's Ass'n v. NLRB, 537 F.2d 706 (2d Cir. 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753, reh. denied, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 753 (1977). A petition for reconsideration and recall of mandate was denied by the Second Circuit on December 16, 1977. A subsequent petition to the NLRB to reopen the unfair labor practice hearing was denied on August 12, 1978. The district court held that the Board's finding that the ILA had committed a section 8(b)(4) violation, made in a proceeding to which both the ILA and the plaintiffs Conex and Twin were parties, collaterally estopped it from litigating its liability for damages on the section 303 count. In Part IV-A of our opinion, 602 F.2d at 503-06, we affirmed that holding. Only the ILA is a defendant in the section 303 count, but it, the shippers and the stevedores are defendants in the section 4 Clayton Act count. All defendants sought dismissal of that count because the Rules on Containers were collective bargaining arrangements falling within the labor exemption to the antitrust laws. In Part V-A-1 of our opinion, 602 F.2d at 511-12, we held that because all the defendants were parties to the unfair labor practice proceedings before the Board they are equally bound by the Board decision enforced by the judgment of the Court of Appeals for the Second Circuit.
 
 
 4
 Conex and Twin were not the only freight consolidators affected by the Rules on Containers, and others filed unfair labor practice charges as well. In each case the Board held that enforcement of the Rules was illegal. The Courts of Appeals for the First and Fourth Circuits enforced the Board's orders. International Longshoremen's Ass'n, Local 1575 v. NLRB, 560 F.2d 439 (1st Cir. 1977); Humphrey v. International Longshoremen's Ass'n, 548 F.2d 494 (4th Cir. 1977). However, in International Longshoremen's Ass'n v. NLRB, 613 F.2d 890 (D.C.Cir.1979), decided five months after the decision in this court, a divided panel in the Court of Appeals for the District of Columbia Circuit declined to enforce a Board order, holding that it had failed to demonstrate that the Rules on Containers were unlawful. The Board's petition for certiorari was granted, and in NLRB v. International Longshoremen's Ass'n, supra, aff'g 613 F.2d 890 (D.C.Cir.1979), a divided Supreme Court affirmed.
 
 
 5
 Meanwhile petitions for certiorari had been filed by all parties to this action. On June 30, 1980, ten days after the filing of NLRB v. International Longshoremen's Ass'n, supra, the Supreme Court granted the petitions for certiorari and without opinion entered the order referred to in the opening paragraph above.
 
 
 6
 The Supreme Court majority held that in determining that the Rules on Containers violated section 8(e), the Board applied an incorrect legal standard. The correct legal standard according to the majority was twofold: (1) whether the union's objective was the preservation of work traditionally performed by employees represented by the union; and (2) whether the contracting employer has the power to assign the work to the employees in question. See National Woodwork Manufacturers Ass'n v. NLRB, 386 U.S. 612, 620, 635, 87 S.Ct. 1250, 1255, 1263, 18 L.Ed.2d 357 (1967); NLRB v. Enterprise Ass'n of Pipefitters, 429 U.S. 507, 517, 97 S.Ct. 891, 897-898, 51 L.Ed.2d 1 (1977). The Board's error, according to the majority, was in focusing on the stuffing and stripping work done by teamsters at the places of business of the freight consolidators, rather than on the work formerly done by longshoremen at the docks. 447 U.S. at 507, 100 S.Ct. at 2315-2317. However, the Supreme Court expressly declined to pass upon the legality of the Rules under either aspect of its twofold test.[1] Instead it affirmed the court of appeals' judgment remanding to the Board for further proceedings.
 
 
 7
 NLRB v. International Longshoremen's Ass'n, supra, presented to the Court none of the issues discussed in our earlier decision other than the possible effect in this case of the Second Circuit decision in International Longshoremen's Ass'n v. NLRB, 537 F.2d 706 (2d Cir. 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753, reh. denied, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 753 (1977). Moreover, that case was not before the Court, although the identical legal issue was. We understand the Supreme Court's mandate remanding for reconsideration in light of NLRB v. International Longshoremen's Ass'n, supra, to be a direction that we reconsider those parts of our decision which directed that the district court give collateral estoppel effect on the existence of an unfair labor practice to the Second Circuit judgment. Those are Parts IV-A and Part V-A-1.
 
 
 8
 Had there been no further proceedings in the Court of Appeals for the Second Circuit, the Supreme Court's remand would have presented us with the troublesome question whether a final judgment should be denied collateral estoppel effect because in litigation between different parties it subsequently is established that the first judgment rests on an erroneous legal premise.[2] We need not reach that question, however, for on the motion of the ILA, the Court of Appeals for the Second Circuit recalled its mandate, vacated its judgment, and remanded to the Board for further proceedings.[3] We are advised that a similar result has been achieved with respect to each of the judgments holding that the Rules on Containers violate section 8(e), and that all those proceedings have been consolidated for hearing before a single administrative law judge on an expedited schedule.[4] Since the judgment which was the predicate for our discussion of collateral estoppel has been vacated, so much of our prior judgment as required giving that judgment any effect in this case must be vacated. In all other respects our earlier decision is unaffected.
 
 
 9
 The new posture of the case, resulting from the Supreme Court's vacation and remand, requires however, that we consider an appropriate direction to the district court in light of the changed circumstances. When the case was before us previously the labor law issues had been definitely resolved by the administrative agency charged with the responsibility for enforcement of the National Labor Relations Act, and there was extant a section 10(l) injunction against enforcement of the Rules on Containers against Conex and Twin. Balicer v. International Longshoremen's Ass'n, 364 F.Supp. 205 (D.N.J.), aff'd mem., 491 F.2d 748 (3d Cir. 1973); Balicer v. International Longshoremen's Ass'n, 86 L.R.R.M. 2559 (D.N.J.1974). We are advised that steps have now been taken to renew enforcement of the Rules, and that as a result a new section 10(l) action is pending in the district court seeking preservation of the status quo pending Board resolution of the issues for determination of which the Supreme Court remanded.
 
 
 10
 It appears to us that the present posture of the several unfair labor practice cases pending before the Board is the result which the Supreme Court anticipated when it decided NLRB v. International Longshoremen's Ass'n, supra. Moreover the Court was quite explicit in its direction on remand that it was the Board which should in the first instance pass upon the legality of the Rules on Containers.[5] Thus the remand in this case must have contemplated that we consider whether, in our direction to the district court, we should require that before it determines the labor law issues it, too, await decision of those issues by the Board. That question has been briefed and argued. The plaintiffs urge that final hearing in the district court should not be held until a decision in the pending consolidated unfair labor practice cases becomes final, while the defendants, for various reasons, prefer that trial of the section 303 and section 4 claims go forward.
 
 
 11
 For several reasons we conclude that final hearing on those claims should not be held until the pending Board charges are finally disposed of. First, there is the problem of obvious duplication of effort. Proof of the section 303 charge will involve, to a large extent, the same evidence which will be presented in the unfair labor practice case. Moreover, even in the antitrust case application of the labor exemption will require development of the same facts. Secondly, although the trial court obviously has subject matter jurisdiction, where resolution of a particular issue has also been vested in an administrative agency having primary responsibility for the resolution of issues arising under a given statutory regulatory scheme, a stay pending agency determination is often appropriate. See International Ass'n of Heat and Frost Insulators v. United Contractors, Inc. of Pittsburgh, Pennsylvania, 483 F.2d 384, 400 (3d Cir. 1973), modified, 494 F.2d 1353 (3d Cir. 1974). This case is one particularly appropriate for initial deference to the agency, for we are dealing with unfair labor practice questions at the interface of two segments of the international transportation industry, involving competing labor unions, and at the interface of labor and antitrust public policies. While the court owes no particular deference to the Board's antitrust views, its own views on the reach of the antitrust laws cannot but be enlightened by the Board's opinion on whether the Rules on Containers are lawful as a matter of labor law. A fortiori this is the case with respect to the section 303 claim. Thirdly, there is the distinct possibility that if both cases go forward simultaneously they may wind up before this court, or before two separate courts of appeals, with conflicting factual determinations, subject to differing standards of appellate review. The interest of the judicial process in avoiding that possibility is obvious. An analogous situation has confronted us with respect to our review of section 10(l) injunction proceedings and of Board orders. If section 10(l) were construed to vest in the district court authority to reach the merits of the underlying unfair labor practice charge, we would face the prospect of reviewing the district court by the clearly erroneous standard of Fed.R.Civ.P. 52(a), while, possibly simultaneously, reviewing a contrary Board decision by the substantial evidence standard of Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). To avoid that result we have interpreted section 10(l) as ancillary to the main unfair labor practice proceeding and have confined the district court in a section 10(l) to determining that the General Counsel has reasonable cause to believe that the elements of an unfair labor practice are present and that the legal theory on which he proceeds is substantial and not frivolous. E. g., Hirsch v. Building & Construction Trades Council of Philadelphia & Vicinity, 530 F.2d 298 (3d Cir. 1976); Samoff v. Building & Construction Trades Council of Philadelphia & Vicinity, 475 F.2d 203 (3d Cir.), vacated for mootness, 414 U.S. 808, 94 S.Ct. 151, 38 L.Ed.2d 44 (1973); Schauffler v. Local 1291, International Longshoremen's Ass'n, 292 F.2d 182 (3d Cir. 1961). The review problem could be even more complex in this case, because of our even narrower scope of review of jury verdicts when compared with our review of injunctions or Board orders. Finally, we cannot close our eyes to the reality that although one count of the complaints before us on this appeal charges violations of the antitrust laws, in a very real sense the labor law questions are primary, while the antitrust law questions are, if not secondary, at least dependent.
 
 
 12
 The defendants object that if the final hearing in this case is delayed while the Board proceeding goes forward they may, if the Board's decision is adverse, be deprived of trial by jury on some issues by virtue of collateral estoppel. That is true, but it is nothing of which defendants can complain. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 333-337, 99 S.Ct. 645, 652-655, 58 L.Ed.2d 552 (1979). The judicial process will benefit significantly from the result of avoiding retrial of issues already decided. On the other hand, if the final hearing in this case is not stayed pending resolution of the Board proceeding, it is doubtful that a verdict in favor of the defendants would preclude the General Counsel from litigating the same issues before the Board because the General Counsel represents public interests in a Board proceeding.
 
 
 13
 On balance, therefore, we conclude that the sounder course is to direct that final hearing on Counts I and III be stayed until the unfair labor practices presently pending before the Board have been finally determined. Such a final determination includes any proceedings seeking judicial review of the Board's action. We do not suggest that in the meantime the case must stand still. Whether discovery should go forward, and whether dispositive motions directed to issues not affected by the alleged unfair labor practice should be entertained are questions we leave to the district court's discretion.
 
 
 14
 The judgment of this court having been vacated by the Supreme Court, on reconsideration the order appealed from, denying the motions of Conex and Twin for summary judgment on Count I and Count III will be affirmed, and the case remanded to the district court for the entry of an order staying final hearing on those counts until a final determination of the unfair labor practice charges pending before the Board. If in those proceedings it should be held that the Rules on Containers violate section 8(e) of the act and the ILA's actions in enforcing them are unfair labor practices under section 8(b)(4)(ii) (B), the court should proceed in accordance with our prior opinion. If the Board should decide that the Rules on Containers do not violate section 8(e) and their enforcement by the ILA was not an unfair labor practice, the court should proceed appropriately disregarding Part IV-A and Part V-A-1 thereof. Each party will bear its own costs.
 
 
 
 [1]
 The opinion of the Court states:
 Respondents assert that the stuffing and stripping reserved for the ILA by the Rules is functionally equivalent to their former work of handling break-bulk cargo at the pier. Petitioners-intervenors, on the other hand, argue that containerization has worked such fundamental changes in the industry that the work formerly done at the pier by both longshoremen and employees of motor carriers has been completely eliminated.
 These questions are not appropriate for initial consideration by reviewing courts. They are properly raised before the Board, whose determinations are, of course, entitled to deference. Since the Board has not had an opportunity to consider these questions in relation to a proper understanding of the work at issue, we will not address them here. We emphasize that neither our decision nor that of the Court of Appeals implies that the result of the Board's reconsideration of this case is foreordained....
 If the Board finds, on remand, that the Rules have a lawful work preservation objective, it will then, of course, be obliged to consider the charging parties' contention that CONASA (Council of North Atlantic Shipping Associations) members did not have the right to control the stuffing and stripping of containers. Because the Board held that the agreement was directed at work acquisition, rather than work preservation, it did not decide the right to control issue in this case. That issue remains open on remand. Therefore, and because the arguments of the parties were necessarily addressed to an erroneous conception of the work whose control was disputed, any discussion of that issue here would be premature. Petitioners have also argued that the employers, as common carriers who are subject to government regulation and to the provisions of their own tariffs, shippers' bills of lading, and intermodal interchange agreements with motor carriers, have no legal right to withhold containers or container services from their customers on a selective basis, to condition access to the containers on compliance with the Rules, to seek indemnification from their customers for fines imposed under the Rules, or to enforce the Rules after the containers have been released to motor carriers.... These contentions present difficult and complex problems which are not properly before us.
 447 U.S. 490, 510-512, 100 S.Ct. 2316, 2317 (footnotes and citations omitted).
 
 
 [2]
 See Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); In re Federal Water & Gas Corp., 188 F.2d 100, 105 (3d Cir.), cert. denied sub nom. Chenery Corp. v. SEC, 341 U.S. 953, 71 S.Ct. 1018, 95 S.Ct. 1375 (1951)
 
 
 [3]
 Order dated October 1, 1980 in Docket Nos. 75-4266, 76-4003
 
 
 [4]
 Board order dated January 19, 1981 in Cases 2-CC-1364, 1365; 2-CE-75; 5-CC-791-94; 5-CE-48-51; 12-CC-1002, 1004; 22-CC-541, 554; 22-CE-19, 20; 5-CC-925, 929; 4-CC-1133; 4-CE-55; 12-CE-30
 
 
 [5]
 See note 1 supra