Arthur **EISENBERG**, Regional Director of the Twenty-second Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD

v.

**WELLINGTON HALL NURSING HOME, INC.**

**Appeal of the NATIONAL LABOR RELATIONS BOARD.**

Arthur **EISENBERG**, Regional Director of the Twenty-second Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD

v.

**WELLINGTON HALL NURSING HOME, INC., Appellant.**

Nos. 81–1081, 81–1082.

United States Court of Appeals, Third Circuit.

Argued May 19, 1981.

Decided June 17, 1981.

As Amended June 30, 1981.

**904**

Murray, Granello & Kenney, Little Silver, N.J., for Wellington Hall Nursing Home, Inc.; James P. Granello, Little Silver, N.J. (argued), of counsel; Stephen R. Fogarty, Little Silver, N.J., on the brief.

William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Harold J. Datz, Associate Gen. Counsel, Joseph E. Mayer, Asst. Gen. Counsel, Joseph P. Norelli, Deputy Asst. Gen. Counsel, Sherrian Knight, Atty., (argued), N.L.R.B., Washington, D.C., for N.L.R.B.

Before GIBBONS, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is an appeal by the Regional Director of the Twenty-second Region of the National Labor Relations Board on the Board's behalf from an order of the District Court of the District of New Jersey denying in part a petition, pursuant to section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j), for a temporary injunction pending Board resolution of unfair labor practice charges.[1] The employer, Wellington Hall Nursing Home, Inc., cross appeals from the same order to the extent that it granted injunctive relief. On the Board's appeal we reverse and remand for the entry of an order reinstating certain employees. On the employer's cross-appeal we affirm.

### I.

Wellington Hall owns and operates a nursing home in Hackensack, New Jersey. On October 1, 1976, Local 1115 Nursing Home & Hospital Employees Union, Division of 1115 Joint Board (the Union) was certified by the Board as the exclusive bargaining representative of approximately 85 of Wellington Hall's service and maintenance employees. The certification did not lead to a mutually satisfactory collective bargaining relationship, and beginning in October 1976 the Union filed a series of unfair labor practice charges alleging refusal to bargain and various forms of retaliations for and threats about employees engaging in protected activity. Several of the Union's charges resulted in unfair labor practice hearings before the Board, and at least two Board orders against Wellington Hall were enforced by this court.[2] One of our judgments, dated December 5, 1979, enforced a Board order that Wellington Hall bargain in good faith with the Union and refrain from interfering with, restraining or coercing employees in the exercise of rights protected by section 7 of the Act, 29 U.S.C. § 157. *See Wellington Hall Nursing Home, Inc.*, 240 N.L.R.B. 639 (1979), *enforced, NLRB v. Wellington Hall Nursing Home, Inc.*, No. 79–1415 (3d Cir. Dec. 5, 1979). Additional unfair labor practice charges were made thereafter. Those giving rise to this appeal grow out of the Union's attempt to bargain. On June 9, 1980, the Union initiated a request for a

---

1. Section 10(j) provides:

    The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall

    cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

    29 U.S.C. § 160(j).

2. *NLRB v. Wellington Hall Nursing Home, Inc.*, No. 80–2144 (3d Cir. Oct. 2, 1980); *NLRB v. Wellington Hall Nursing Home, Inc.*, No. 79–1415 (3d Cir. Dec. 5, 1979).

bargaining meeting, offering alternative dates. Wellington Hall indicated these were inconvenient and suggested other dates. While negotiations over a time for a bargaining session were going on, the Union held a meeting of bargaining unit members to discuss demands and designate an employee negotiating committee. A bargaining meeting finally was scheduled for June 25,.1980, but prior to that time several of the employees named by the Union as members of the employee negotiating committee were discharged. Additional employees were discharged after June 25. In addition, Wellington Hall discharged other employees who had attended the Union meeting, or solicited employees to attend. On June 24, Wellington Hall cancelled the June 25 scheduled meeting. It also cancelled a subsequently scheduled August 28 meeting. The excuses offered in each instance fail to mitigate the effect of employer resistance, especially in light of the totality of the circumstances. The Union filed unfair labor practice charges with the Board with respect to the employee discharges, and a complaint and notice of hearing issued. The complaint alleges that the employees were discharged because they engaged in, or sought to engage in concerted activities for the purposes of collective bargaining or mutual aid and protection. *Wellington Hall Nursing Home, Inc.*, Case No. 22–CA–10108 (Sept. 5, 1980).

On October 8, 1980, the Regional Director filed in the District Court a petition for an injunction under section 10(j) of the Act, setting forth the appropriate jurisdictional facts, appending a copy of the unfair labor practice complaint about employee discharges pending before the Board, and alleging that he has reasonable cause to believe the unfair labor practices have been committed and are likely to be continued. On the return of an order directing Wellington Hall to show cause why a temporary injunction should not issue the court heard testimony, and on November 18, 1980 it entered the order from which both parties

appeal. The court restrained Wellington Hall from discharging employees in the bargaining unit without first giving written notice to the employee, the Union, and the Board. The order gives the Board and the Union five business days to object to any discharge and to request that a disputed discharge be referred to a special master for resolution. Wellington Hall's appeal puts the injunction in issue. The court refused to order reinstatement of the eight employees whose discharge is the subject of the pending Board complaint. The Board appeal seeks a reversal of that refusal. On February 4, 1981 a panel of this court granted the Board's motion for an injunction pending appeal, directing reinstatement of five of the discharged employees.

## II.

Wellington Hall contends that the district court erred in holding that the regional director had demonstrated his reasonable cause to believe that the elements of an unfair labor practice are present. Thus, it contends, no injunction should have issued. In *Eisenberg v. Hartz Mountain Corp.*, 519 F.2d 138, 143 (3d Cir. 1975), we held that reasonable cause to believe a violation of the act has occurred, a standard for injunctive relief originally developed in cases arising under section 10(*l*) of the Act, is also applicable to section 10(j) proceedings. The trial court's determination that this low threshold of proof was met is reviewed by a clearly erroneous standard. *Angle v. Sacks*, 382 F.2d 655 (10th Cir. 1967). The trial court found that the Board had reasonable cause to believe the discharges were motivated by anti-union animus. There is evidence of a history of employer resistance to collective bargaining. Each employee discharged was an active union supporter, and five of the eight who were discharged were designated members of the union-sponsored six employee negotiating committee.[3] Wellington Hall

3. On February 4, 1981, this court ordered reinstatement of these five employees. The sixth member of the employee negotiating committee was also discharged, but reinstatement is not sought on her behalf.

maintains all were discharged for poor work quality, tardiness, and absenteeism. However, many of the problems referred to in its notices of discharge were remote in time or of minimal gravity. Thus the Board could reasonably believe that the notices were records compiled as a basis for discharge from payroll records and time cards long after the fact.

■ Wellington Hall relies on caselaw dealing with mixed motive discharges, such as *Edgewood Nursing Center, Inc. v. NLRB*, 581 F.2d 363, 368 (3d Cir. 1978). The cases relied on, however, are all cases reviewing final Board action, in which we review for substantial evidence in the record as a whole of the employer's anti-union motivation. In a section 10(j) or 10(*l*) case the court need not, indeed should not, make a finding of employer motivation. It need only find a reasonable cause for belief that there was such a motivation. That standard of proof is fully satisfied on this record.

### III.

Although the district court properly held that the Board satisfied the reasonable belief standard for section 10(j) relief, and properly enjoined future retaliatory discharges or intimidations of union supporters, it refused to order reinstatement of the eight discharged employees. In doing so it relied upon the provision in section 10(j), found also in section 10(*l*), that, in the public interest, the court may grant "such temporary relief or restraining order as it deems just and proper." The denial of reinstatement was not predicated on a finding that the Board would be likely, ultimately, to find good cause for the discharge independent of the employees' union activity. Rather the court fashioned a new and unprecedented rule of law that reinstatement pending a board hearing is not a proper section 10(j) remedy. The court advanced two reasons for this rule, neither of which are persuasive.

First, the court noted that when the Board sought temporary injunctive relief it was not required to post an injunction bond. That is so, but the lack of such a requirement reflects a congressional decision that in protecting the public interest the Board must in section 10(*l*) cases, and may in section 10(j) cases, preserve the status quo. Even though enormous economic interests may be at stake, as in *Consolidated Express, Inc. v. New York Shipping Ass'n, Inc.*, 641 F.2d 90 (3d Cir. 1981), *mandamus and prohibition denied*, —— U.S. ——, 101 S.Ct. 2008, 68 L.Ed.2d 318 (1981), and *Pascarell v. New York Shipping Ass'n, Inc.*, 650 F.2d 19 (3d Cir. 1981), the unavailability of an injunction bond is no reason for permitting a change in status quo which risks giving ongoing effect to what may be an unfair labor practice. Moreover the concern about protecting the employer from the harm from an injunction is in the employee reinstatement context entirely misplaced. The employer will receive the benefit of the reinstated employees' labor in the interim. If there is a serious question about the quality of any employee's future work performance he can be discharged when the question arises. The injunction which was fashioned here with respect to those employees who were not discharged demonstrates that there is ample room for accommodation of management's legitimate need to supervise the workforce.

■ The court also noted that there was no need for a reinstatement order because the Board, if it found that the discharges were in retaliation for engaging in protected activity, could order reinstatement with back pay. That reasoning, however, misapprehends the purpose of section 10(j) relief. When the Board files an application for such relief it is not acting on

behalf of individual employees, but in the public interest. *See Eisenberg v. Hartz Mountain Corp., supra.* That interest is in the integrity of the collective bargaining process. If union supporters are excluded from the bargaining process pending resolution of unfair labor practice charges, the position of the designated bargaining representative will in all likelihood be substantially undermined. All members of the bargaining unit may be affected by such an erosion of union support. Furthermore, the discharge of "active and open union supporters ... risk[s] a serious adverse impact on employee interest in unionization." *Kaynard v. Palby Lingerie, Inc.,* 625 F.2d 1047, 1053 (2d Cir. 1980). When the Board, faced with an employer's resort to tactics calculated to undermine union support at a critical stage of the bargaining process, seeks section 10(j) relief, the focus of attention should not be on what relief may ultimately be granted to individual employees, but on the likelihood of harm to the bargaining process in the interim.[4]

▮ This is not a case in which the Board tolerated erosion of union support by delaying for a long period after charges were filed before seeking section 10(j) relief. *Cf. Boire v. Pilot Freight Carriers, Inc.,* 515 F.2d 1185, 1193 (5th Cir. 1975), *cert. denied,* 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976) (delay is "some evidence that the detrimental effects of the discharges have already taken their toll" such that reinstatement would probably be no more effective than final Board order). *See also Eisenberg v. Hartz Mountain Corp.,* 519 F.2d 138 (3d Cir. 1979) (six month time span can make difference in employee attitude). The Board moved promptly to preserve the status quo in an existing bargaining relationship already the subject of a fully litigated bargaining order, following a Board

certification of the bargaining representative. The trial court's reasons for refusing to order reinstatement are legally insufficient. In view of the potential for irreparable harm to the designated bargaining representative from the loss of eight union supporters in the small bargaining unit, it was an abuse of the discretion that section 10(j) affords to refuse to order reinstatement. *Brown v. Pacific Telephone and Telegraph Co.,* 218 F.2d 542 (9th Cir. 1954) (as amended in 1955 on denial of rehearing).

## IV.

The order appealed from will be affirmed insofar as it granted injunctive relief pending final Board action. It will be reversed insofar as it denied the Board's request for an order requiring reinstatement of eight employees. The order of this court granting injunctive relief pending appeal shall remain in effect until such time as an order consistent with this opinion is entered in the district court.

---

4. Judge Biunno was also concerned that reinstatement might raise "an appearance of prejudging the issue as to any employee." In light of the above analysis, as well as the fact that § 10(j) relief is not premised on a determination of the merits, such concern is unwarranted.