Edward A. GRUPP, Acting Regional Director for Region Six of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

UNITED STEELWORKERS OF AMERICA and its Local 9051, AFL–CIO–CLC, Respondents.

Civ. A. No. 82–1, Erie.

United States District Court,
W. D. Pennsylvania.

Feb. 16, 1982.

Barton Meyers, N. L. R. B., Pittsburgh, Pa., for petitioner.

Howard Grossinger, Pittsburgh, Pa., for Local 9051.

Rudy Milasich, Pittsburgh, Pa., for International.

OPINION AND ORDER

WEBER, Chief Judge.

This case came to be heard upon the verified petition of Edward A. Grupp, Acting Regional Director for Region Six of the National Labor Relations Board, for an injunction pursuant to § 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j),

pending the final disposition of several unfair labor practices charges pending before the Board. Respondents have filed answers to this petition. A hearing on the issues raised by the petition and answers was duly held on January 21, 1982. At this hearing all parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence, and to argue on the evidence and the law. The court has fully considered the petition, answers, evidence, trial memoranda and arguments of counsel. Upon consideration of the entire record we conclude that injunctive relief is appropriate in this case. Accordingly we will enter such an injunction.

## 1. FACTS AND DISCUSSION

This petition for injunctive relief arises out of a labor dispute that began in the summer of 1980. At that time the United Steelworkers of America, AFL–CIO–CLC, (International) was conducting an organizing campaign at the North East Pennsylvania Plant of RUR Industries. As a result of this campaign a representation election was held at this plant under the supervision of the National Labor Relations Board. In this election the employees of RUR's North East facility narrowly voted to adopt the International as their exclusive bargaining representative. On October 31, 1980, the United Steelworkers of America was certified by the Board as the bargaining representative for these employees. Following its certification the International chartered Local 9051 to represent the employees comprising this bargaining unit at the RUR North East Plant.

In the spring of 1981 the Union and management entered into negotiations on a collective bargaining agreement covering these employees. Talks soon reached an impasse, however, and in April the Union established midnight May 31, 1981 as the deadline for negotiations. No result having been reached by that deadline, Local 9051, with the authorization of the International, voted to strike the North East Plant.

From the outset the strike was marked by violence. Throughout the summer of 1981 there were numerous incidents of violence and intimidation on the picket line. Non-striking employees were threatened; access to the plant was blocked; property was damaged; and individuals were injured. On several occasions officers of Local 9051 and representatives of the International were present when these incidents occurred. Moreover throughout this period the International continued to pay strike benefits to the members of Local 9051. The International also provided funds for legal representation of some members of Local 9051 who were charged criminally on matters arising out of alleged acts of picket line misconduct.

RUR, through its attorneys, petitioned the Court of Common Pleas of Erie County for an injunction prohibiting the Unions and their members from engaging in picket line violence. On June 4, 1981, the parties entered into a consent decree. In this consent decree the Unions were enjoined from blocking ingress and egress to RUR's plant; engaging in violence or threats of violence on the picket lines; threatening non-striking employees or engaging in any other unlawful acts.

As violence continued at the RUR plant through the summer and fall of 1981 attorneys for the company returned to the Court of Common Pleas on several occasions seeking contempt citations against the Union and its members. On each occasion the court refused to issue such a citation, choosing instead to order the parties to proceed with bargaining.

On or about September 11, 1981, RUR Industries filed with the National Labor Relations Board an unfair labor practice charge alleging that the United Steelworkers of America, AFL–CIO–CLC (International), had engaged in and was engaging in unfair labor practices within the meaning of § 8(b)(1)(A) of the Act. One month later on October 15, 1981, RUR amended its unfair labor practice charge to add United Steelworkers of America Local 9051 as a party-respondent. These charges were referred to the Regional Director of the Sixth Region of the Board. On or about October

30, 1981 the general counsel of the Board issued a complaint and notice of hearing pursuant to § 10(b) of the Act, alleging that respondents had engaged in, and were engaging in, unfair labor practices within the meaning of § 8(b)(1)(A) of the Act. On or about December 21, 1981 an amended complaint was issued by the Board. A hearing on these complaints was conducted before an Administrative Law Judge on February 2, 1982.

During the pendency of these proceedings sporadic acts of violence continued to occur on the picket line. Through November and December of 1981 and into January of 1982 nails were frequently found in the driveway leading to the RUR plant. On several occasions during this period picketers blocked access into and out of the plant. In addition at this time individuals entering and leaving the plant itself were threatened by picketers. Objects, including snowballs, bricks and burning sticks, were thrown at RUR property. As recently as December 28, 1981 a security guard employed by RUR Industries was injured by an ice ball, allegedly thrown by a picketer.

These continued acts of violence and intimidation led to the instant petition by the National Labor Relations Board to enjoin all picket line misconduct pending resolution of the unfair labor practice charges now before the Board.

In this case the NLRB is proceeding pursuant to § 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j). This section provides that: "The board shall have power, upon issuance of a complaint as provided in subsection b charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States District Court, within any district wherein the unfair labor practice in question is alleged to have occurred, or wherein such person resides or transacts business for appropriate temporary relief or restraining order."

■ For such a petition to be granted and an injunction to issue the court must determine both: (1) that there is reasonable cause to believe that the respondents have

violated the Act; and (2) that injunctive relief is just and proper in the circumstances presented. *See, Eisenberg v. Wellington Hall Nursing Home, Inc.*, 651 F.2d 902 (3d Cir. 1981); *Eisenberg v. Hartz Mountain Corporation*, 519 F.2d 138 (3d Cir. 1975).

■ Turning initially to the question of reasonable cause, in making this determination we recognize that the Board need not conclusively prove that the actions of the respondents violate the National Labor Relations Act. The standard of proof employed in these cases merely requires that the Board demonstrate some reasonable cause to believe that the respondents are involved in violations of the Act. This standard has, quite correctly, been characterized as a "low threshold of proof." *Eisenberg v. Wellington Hall Nursing Home, supra*, at 905.

■ In this case we feel that the petitioner has met this threshold of proof with respect to both the International and the Local. The record developed in the hearing held before this court reflects a long history of violence in this labor dispute. From the first day of the strike picketers at RUR's North East Plant have engaged in acts of violence and intimidation. These picketers have blocked access to the plant; threatened non-striking employees; and caused both property damage and personal injury. Furthermore the testimony received at this hearing indicates that these actions are continuing sporadically to the present date.

Accordingly we have reasonable cause to believe that much of the conduct of these picketers violates the National Labor Relations Act. Moreover, on this record, we feel that reasonable cause exists to believe that both Local 9051 and the International should be held responsible for this conduct.

With respect to Local 9051, the evidence presented at the hearing demonstrated that officers of the Local were present on numerous instances when acts of intimidation and violence occurred. The record further reveals that, on several occasions, Local officers actively engaged in such acts. In fact one Local Union officer was criminally

charged and convicted of a misdemeanor in connection with alleged acts of picket line misconduct. The testimony presented at this hearing also indicated that the officers of the Local were closely monitoring the picket line throughout the course of this strike. Given the continuing nature of the picket line misconduct we conclude that reasonable cause exists to believe that these Local officers were aware of the current problems along the picket line. Yet these officers took no effective steps to control or disavow this conduct. Accordingly we hold that there is reasonable cause to believe that Local 9051 bears responsibility for these acts of picket line misconduct.

As for the International we believe, that as the certified bargaining representative for these employees, it too bears some responsibility for their alleged acts of picket line misconduct. The International authorized the strike. The International has continued to provide strike benefits to the members of Local 9051 throughout this dispute. The International has also provided funds for legal representation for members of Local 9051 who have been criminally charged on matters arising out of alleged acts of strike related misconduct. Such payments certainly should have alerted the International to the fact that problems were occurring on this picket line.

Moreover the staff representative of the International, Mr. John Dever, was personally present on several occasions when picketers engaged in violent and intimidating acts. Again, given the continuing nature of this misconduct, we conclude that reasonable cause exists to believe that Dever, as the staff representative of the International, knew or should have known of current problems on the picket line. Therefore, we hold that there is reasonable cause to believe that the International also bears responsibility for current picket line misconduct.

In reaching this conclusion we recognize that Dever and the officers of the Local denied knowledge of recent misconduct and testified at length regarding the efforts they had taken to curtail picket line vio-

lence. While this testimony may go to the ultimate merit of the unfair labor practice charges pending against the Unions, it does not justify denying injunctive relief under § 10(j) of the Act. The scope of our inquiry at this point is quite limited. We are not free to determine the ultimate issue of whether the Unions' actions violate the National Labor Relations Act. That determination is entrusted exclusively to the NLRB. Rather we must merely determine whether reasonable cause exists to believe that violations have occurred.

In this case petitioner has shown that a continuing pattern of violence exists at the picketed RUR Industries plant. Petitioner has demonstrated that both the Local and the International knew or should have known of this violence. Petitioner has also established that, on several occasions, International staff representatives and Local officers were present when these acts occurred. The evidence further indicates that some Local Union officers actually engaged in acts of violence and intimidation. Finally it is apparent that neither the Local nor the International has effectively disavowed or controlled this conduct. Therefore, we feel that this record supports the conclusion that there is reasonable cause to believe that violations of the Act have occurred and that both respondents are responsible for these violations.

We also hold that injunctive relief is just and proper in these circumstances. The acts complained of in this case are continuing to this date. They are acts which present a grave danger of personal injury and property damage to strikers, non-striking employees, and third parties.

Any injunction we issue in this case would be narrowly limited. It would preserve the rights of striking employees to conduct lawful picketing activities at the RUR Industries plant. All that would be prohibited are those acts of violence and intimidation which are proscribed under the National Labor Relations Act. Moreover, the injunction itself would only extend until such time as the NLRB ultimately decided the issues raised in the unfair labor practice

charges now before it. We have been informed that a hearing was conducted on these charges on February 2, 1982. Accordingly we anticipate that the term of this injunction would be relatively brief.

## II. CONCLUSION

Having found both that there is reasonable cause to believe that the United Steelworkers and its Local 9051 have violated the Act; and that injunctive relief is just and proper in the circumstances; we conclude that such an injunction should issue. The findings of fact and conclusions of law of the court are embodied in this Opinion.

An appropriate order will issue.