238 F.3d 69 (1st Cir. 2001)
 ROSEMARY PYE, Regional Director of Region I of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner, Appellee,
v.
EXCEL CASE READY, Respondent, Appellant.
 No. 00-1632
 United States Court of Appeals For the First Circuit
 January 26, 2001
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
 [Hon. Mark L. Wolf, U.S. District Judge][Copyrighted Material Omitted]
 Robert D. Overman, with whom Morris, Laing, Evans, Brock & Kennedy, Chartered, Edward D. Shoulkin and Taylor, Duane, Barton & Gilman, LLP, were on brief, for appellant.
 Richard J. Lussier, with whom Ellen A. Farrell, Deputy Associate General Counsel and Judith I. Katz, Assistant General Counsel, were on brief, for appellee.
 Before Torruella, Chief Judge, Bownes, Senior Circuit Judge, and Saris,* District Judge.
 TORRUELLA, Chief Judge.
 
 
 1
 Section 10(j) of the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 160(j), allows the National Labor Relations Board (the "Board") to apply to a federal district court for temporary injunctive relief upon issuing a complaint that a company is engaging in unfair labor practices.[1] After issuing such a complaint against appellant Excel Case Ready ("Excel") in connection with the discharge of several union organizers (among other actions), the Board sought a § 10(j) injunction. The district court granted the temporary injunction and provided for the reinstatement of five discharged employees. Pye v. Excel Case Ready, Memorandum and Order, No. 00-10603-MLW, slip op. at 14 (D. Mass. May 8, 2000) [hereinafter Excel, District Court Order]. Excel appeals, claiming that the Board failed to meet its burden of proof for the "irreparable harm" prong of the injunctive relief standard, and that the district court incorrectly applied governing law. For the reasons stated herein, we affirm the decision of the district court.
 
 BACKGROUND
 
 2
 The facts underlying this appeal are extensive and, to some extent, disputed. For the purposes of this appeal, we summarize the relevant facts and note the determination of the district court as to disputed issues.[2]
 
 
 3
 Excel is a meat-preparing business with 20,000 employees nationwide. In August 1999, it began hiring staff for a new facility in Taunton, Massachusetts. In September, representatives of the United Food and Commercial Workers Union, Local 791 (the "Union") began attempts to unionize the Taunton plant. Employees Keith and Tamila Fiola became active in the unionization effort. During October 1999, the Union gained significant support among Excel employees. An initial meeting, attended only by the Fiolas, was held on October 7, 1999. Ten employees attended a second meeting held on October 14, 1999. Fourteen employees attended a third meeting on October 21, 1999. During this period, a number of employees signed union authorization cards.[3] The Fiolas and another employee, Michael Paiva, also placed Union bumper stickers on their vehicles to indicate their support for unionization.
 
 
 4
 Excel has a stated company policy discouraging union membership and a stated commitment to maintaining a "union free environment" at its plants. The district court found that after learning of the Union initiative, several members of Excel management, including plant manager Stephen Fleming, expressed their "displeasure" with the unionization effort and threatened to "punish any 'troublemakers.'" Excel, District Court Order at 3. The district court also found that employees were told that their 401(k) plans would be in jeopardy if the plant were unionized. Id. at 4.
 
 
 5
 On October 25, the Fiolas asked for the next day off because they planned to attend a wrestling match that evening. Fleming refused the request. The Fiolas then "called in sick" that night to warn Excel that they would not be at work the next day. When they returned to work on October 27, 1999, the Fiolas were fired for the stated reason that they had falsely claimed to be sick.[4] Another employee, who had missed work for the same reason but had not called in sick, was not discharged, although he later quit.
 
 
 6
 The same day, Excel management requested copies of the employment questionnaires and Pinkerton background checks required of all new employees. They determined that Paiva had represented on his questionnaire that he had never received workers' compensation, when in fact he had received $173. As a result, Excel discharged Paiva, ostensibly for violating the policy against falsification. During the next several days, Excel reviewed the questionnaires and background checks of other employees and discharged two anti-union employees, Jan Pacheco and Ernest Watson, for similar falsifications of workers' compensation information. The court concluded that it was likely to be proven that the real reason for Excel's discharges of the Fiolas was "to punish them for their Union activity and to discourage other employees from supporting the Union." Id. at 6. The court also found that it was likely to be proven that Paiva was discharged not because he lied on his questionnaire, but due to his union sympathies, and that the discharges of Pacheco and Watson were made for pretextual reasons, that is, to cover-up the real reason for firing Paiva.
 
 
 7
 The district court then applied the two-prong standard for § 10(j) interim relief, which requires (i) that the Board show "reasonable cause" to believe that the defendant has committed the unlawful labor practices alleged,[5] and (ii) that injunctive relief be "just and proper." See, e.g., Asseo v. Centro Medico del Turabo, 900 F.2d 445, 450 (1st Cir. 1990). The court concluded that the set of facts likely to be proved demonstrated reasonable cause to believe that Excel had violated the NLRA; i.e., that the Board's position was "fairly supported by the evidence." Excel, District Court Order at 9. Specifically, if the facts indicated were ultimately proven, Excel would be shown to have violated §§ 8(a)(1) and 8(a)(3) of the Act, 29 U.S.C. §§ 158(a)(1) and (3).[6] Excel, District Court Order at 9-10.
 
 
 8
 The district court then evaluated whether the injunction was "just and proper." In accordance with this Court's decision in Sullivan Bros., the district court applied "the familiar four-part test for granting preliminary relief," including the caveat that "when, as in this case, the interim relief sought by the Board is essentially the final relief sought, the likelihood of success should be strong.'" 38 F.3d at 63 (quoting Pan Am. Grain Co., 805 F.2d at 29). Sullivan Bros., 38 F.3d at 63 (citing Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir.1991)).[7] First, the district court noted that the evidence indicated a "strong" likelihood of success in ultimately proving the violations. Excel, District Court Order at 9. Second, the court evaluated the potential for irreparable injury in the absence of interim relief. It determined that the discharges of the Fiolas and Paiva had a "substantial, chilling effect on Union activity," that the unionization efforts "had ground to a halt," and that delays in Board adjudication might make reinstatement as a final remedy impossible. Id. at 11. Third, the court weighed this harm against that which the injunction would impose on Excel, and concluded that any hardship incurred in the displacement of new employees due to reinstatement was outweighed by the restoration of a free and fair process for determining whether employees wanted to unionize. Id. at 12. Finally, the court noted that the issuance of an injunction was in the public interest, due to the public's interest in ensuring that the purposes of the NLRA be furthered. Id. at 13 (citing Pan American Grain Co., 805 F.2d at 28).
 
 
 9
 The district court enjoined Excel from engaging in any further unfair labor practices, reinstated the five discharged employees, and required Excel to post copies of the Order in the Taunton facility. Id. at 13-15. The district court later denied appellant's petition for a stay pending appeal, Pye v. Excel Case Ready, Order, No. 00-10603-MLW (D. Mass. May 16, 2000), a decision we affirmed, Pye v. Excel Case Ready, No. 00-1632 (1st Cir. Sept. 27, 2000). Prior to oral argument before this Court, an ALJ heard the case and determined that Excel had engaged in unfair labor practices. The ALJ recommended that Excel be ordered to cease and desist such practices and reinstate the five discharged employees. Excel, ALJ opinion at 44-46.
 
 
 10
 On appeal, Excel only argues that the Board failed to meet its burden of proof on the "irreparable harm" prong of the preliminary injunction test.
 
 DISCUSSION
 
 11
 The district court's determination to grant a § 10(j) injunction is accorded significant deference.[8] We review the court's determination of reasonable cause for clear error. Sullivan Bros., 38 F.3d at 63. Our review of the ultimate decision to grant or deny equitable relief is for abuse of discretion. Id. A court abuses its discretion if it applies an improper legal standard or erroneously applies the law to particular facts. Id. at 63-64.
 
 
 12
 Appellant first argues that the district court abused its discretion by applying an incorrect legal standard. According to appellant, the district court erroneously presumed the existence of an irreparable injury based on its determination that the Board was substantially likely to succeed on the merits.[9] Appellant argues that if the court had not relied on this presumption and had used the correct standard, the evidence was insufficient to meet the irreparable harm requirement, in particular because of eleven employee affidavits denying any infringement of § 7 rights after the discharge of the five employees.
 
 
 13
 In support of this argument, appellant cites the following statement made by the court during the § 10(j) hearing:
 
 
 14
 So shouldn't I interpret [Fuchs v. Jet Spray Corp., 560 F. Supp. 1147, 1155 (D. Mass.), aff'd, 725 F.2d 664 (1st Cir. 1983)] as the First Circuit[10] telling me that if I conclude that it's reasonably likely that the government will establish that the Fiolas and Paiva were fired because they were actively supporting the union in this sort of embryonic plant and unionization process, the failure to reinstate them could have the serious adverse impact that is required to meet the irreparable harm prong?
 
 
 15
 Appellant reads this question as evidence that the district court incorrectly inferred irreparable harm solely from the "failure to reinstate" employees fired for "actively supporting the union," i.e., from the likelihood of success on the merits.
 
 
 16
 We do not agree that the district court abused its discretion by applying an incorrect standard to determine whether irreparable harm existed. To start, appellant has taken the statement somewhat out of context. First, counsel for appellant immediately contradicted the statement by arguing that such an approach would make a § 10(j) injunction automatic rather than an extraordinary remedy. We are unwilling to assume that the district court necessarily applied a particular standard when it provided the parties a chance to address the legal merits of that standard. Second, the district court's query was based on the belief that the "failure to reinstate[] [the discharged employees] could have a serious adverse impact on employee interest in unionization." In other words, a fair reading does not show a district court presuming irreparable harm from the likelihood of success, but rather a court noting that the factual basis for the likelihood of success prong could also provide evidentiary support for a finding of irreparable harm.
 
 
 17
 Moreover, the district court's analysis of irreparable harm in its Order indicates that it ultimately applied the correct legal standard. The court explained:
 
 
 18
 The evidence indicates that the firings of the Fiolas and Paiva, among other unfair labor practices, have had a substantial chilling effect on Union activity at the Taunton plant. The unionization effort has ground to a halt. At least some employees have been intimidated and are evidently afraid to act on their previously expressed interest in the Union.
 
 
 19
 Excel, District Court Order at 11. This Court has indicated that the "discharge of active and open union supporters . . . risks a serious adverse impact on employee interest in unionization" and can create irreparable harm to the collective bargaining process. Pan Am. Grain Co., 805 F.2d at 27 (quoting Eisenberg v. Wellington Hall Nursing Home, Inc., 651 F.2d 902, 906-07(3d Cir. 1981) (internal quotation omitted)). The absence of key union organizers can contribute to the erosion of support for a nascent union movement. Centro Medico, 900 F.2d at 454. Moreover, the fear of employer retaliation after the firing of union supporters is exactly the "irreparable harm" contemplated by § 10(j). Id.; see also NLRB v. Electro-Voice, Inc., 83 F.3d 1559, 1572 (7th Cir. 1996) (noting the "chilling effect" on organization that often follows the illegal discharge of key union members).
 
 
 20
 The district court also noted that "a long time may pass before the Board decides the merits of this case, [during which period] the spark to unionize the Taunton plant may be completely extinguished." Excel, District Court Order at 11. Section 10(j) interim relief is designed to prevent employers from using unfair labor practices in the short run to permanently destroy employee interest in collective bargaining. To allow such interference with a unionization effort would make the Board's remedial process ineffective simply because it is not immediate. See, e.g., Electro-Voice, 83 F.3d at 1573-74. Because the disappearance of the "spark to unionize" may be an irreparable injury for the purposes of § 10(j), the district court does not abuse its discretion when evidence shows that the discharge of union supporters has delayed or halted the unionization effort. Aguayo v. Tomco Carburetor Co., 853 F.2d 744, 749 (9th Cir. 1988); Universidad Interamericana de P.R., 722 F.2d at 958-60.
 
 
 21
 Lastly, the district court feared that "the improperly discharged employees are likely to accept other jobs and find it difficult, if not impossible, to accept reinstatement with Excel." Excel, District Court Order at 11. Although § 10(j) relief is not designed to address harm to particular employees,[11] Wellington Hall, 651 F.2d at 906-07, the fact that the original union organizers will likely never return to work if interim relief is not granted may itself cause irreparable injury to the unionization effort, as the district court correctly pointed out. See Electro-Voice, 83 F.3d at 1573 (failure to reinstate may make "effective organization and representation no longer possible"); Tomco Carburetor Co., 853 F.2d at 749 (noting that lack of interim reinstatement may lead to employer success in removing the union from a facility); Angle v. Sacks, 382 F.2d 655, 660 (10th Cir. 1967) (calling reinstatement after a long period an "empty formality").
 
 
 22
 Appellant claims that a determination of irreparable harm in this case would require us to find irreparable harm every time employees active in a union movement are discharged and the Board brings a complaint. This is simply not true. See, e.g., Sharp v. Parents in Cmty. Action, Inc., 172 F.3d 1034, 1040 (8th Cir. 1999) (refusing to grant § 10(j) injunction "when there was no collective bargaining in process, no recognized or certified union, no on-going organizing activities, no showing of strong union support . . ., and only one union activist discharged"). Moreover, a company always has the right to discipline an employee in a non-discriminatory fashion for improper conduct. Electro-Voice, 83 F.3d at 1573. The district court found that the fairly egregious facts here did not indicate that Excel acted in a non-discriminatory manner: five employees (15-25% of the workforce) were discharged, two of them in an attempt to cover-up unfair labor practices; other attempts to discourage unionization occurred, including intimidation, retaliatory searches, and threats to eliminate employee pension plans; and the union effort essentially halted upon the discharge of the employees. In Electro-Voice, on similar facts, the Seventh Circuit found that the district court had abused its discretion by not granting an injunction. 83 F.3d 1559, 1572-73. The district court did not abuse its discretion by granting an injunction here.
 
 
 23
 Appellant also suggests that the court abused its discretion by failing to consider the eleven employee affidavits alleging that the affiants did not feel dissuaded from union activities, but instead felt "totally uninhibited" in the exercise of their § 7 rights. We do not believe that the court failed to consider these affidavits. First, during the § 10(j) hearing, the district court explicitly noted the existence of the affidavits. Second, the order may not have mentioned the affidavits simply because they were of limited evidentiary value: most of the eleven affiants were anti-union, and thus could not be expected to have any fear of retaliation, or to worry about employer dissuasion from organization. Third, the affidavit of the Union representative provided sufficient evidence that - no matter the feelings of the other affiants - union activity had stopped after the illegal discharges. As we discussed above, such cessation may be sufficient to support a finding of irreparable harm to the collective bargaining process, even absent evidence of actual fear of retaliation from non-discharged employees.
 
 
 24
 A final note. A question was raised at oral argument as to whether this Court uses, or should use, a "sliding scale" test to determine whether equitable relief is "just and proper." Such a test allows a lower threshold for irreparable injury when the likelihood of success on the merits is particularly strong. See, e.g., Electro-Voice, 83 F.3d at 1568. Several other circuits have used this test in the § 10(j) context. Id.; California Pac. Med. Ctr., 19 F.3d at 460-61. This Court uses it in the context of other types of preliminary injunctions. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 19-20 (1st Cir. 1996) (breach of contract action); Gately v. Commonwealth, 2 F.3d 1221, 1232 (1st Cir. 1993) (increase in showing of irreparable harm required given other factors counseling against equitable relief). Because the evidence of irreparable injury is sufficient here to support injunctive relief without resort to the sliding-scale approach, we need not determine whether that approach should be used for § 10(j) injunctions.
 
 CONCLUSION
 
 25
 The district court correctly stated the standard for injunctive relief in the § 10(j) context, and the Board presented sufficient evidentiary support to meet the "irreparable injury" prong of the four-part standard. Thus the district court did not abuse its discretion in its grant of equitable relief.
 
 
 26
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Of the District of Massachusetts, sitting by designation.
 
 
 [1]
 Section 10(j) reads as follows (in relevant part):
 The Board shall have power, upon issuance of a complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court . . . for appropriate temporary relief or restraining order. Upon the filing of any such petition the court . . . shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.
 
 
 [2]
 In a § 10(j) case, the district court is not the ultimate fact-finder, but merely determines what facts are "likely to be proven" to determine if the standard for an injunction has been met. See Asseo v. Pan Am. Grain Co., 805 F.2d 23, 25 (1st Cir. 1986).
 
 
 [3]
 A certain percentage of employees must sign cards for a union election to occur. An administrative law judge (ALJ) found that 21 of 32 eligible Taunton employees had signed authorization cards as of October 21, 1999. Excel Case Ready, Nos. 1-CA-37682, 1-CA-37769, slip op. at 5 (NLRB July 28, 2000) [hereinafter Excel, ALJ opinion].
 
 
 [4]
 A company policy prohibiting "misrepresentation of any facts or conditions" provided that a violation "will result in disciplinary action up to and including discharge."
 
 
 [5]
 We have noted that the inquiry into reasonable cause may be superfluous given that the "just and proper" prong of the standard requires that the claim have a "substantial likelihood of success on the merits." See Pye v. Sullivan Bros. Printers Inc., 38 F.3d 58, 64 n.7 (1st Cir. 1994). At any rate, we did not decide in Sullivan Bros. whether we should abandon the reasonable cause requirement, and it is again not at issue here.
 
 
 [6]
 Section 8(a)(3) makes it illegal to terminate an employee to discourage membership in a labor organization. See NLRB v. Wright Line, 662 F.2d 899, 901 (1st Cir. 1981). Discharge of neutral employees to facilitate a cover-up violates §§ 8(a)(1) and (3) of the Act. See Bay Corrugated Container, Inc., 310 N.L.R.B. 450, 451 (1993), enforced, 12 F.3d 213 (6th Cir. 1993).
 
 
 [7]
 To satisfy the four-part test for injunctive relief, the Board must demonstrate:
 (1) a likelihood of success on the merits;
 (2) the potential for irreparable injury in the absence of relief;
 (3) that such injury outweighs any harm preliminary relief would inflict on the defendant; and
 (4) that preliminary relief is in the public interest.
 
 
 [8]
 This is especially so given findings of the ALJ consistent with those anticipated by the district court. See Seeler v. Trading Port, Inc., 517 F.2d 33, 37 n.7 (2d Cir. 1975) (subsequent findings by ALJ "bolster" district court's factual conclusions).
 
 
 [9]
 Although the Ninth Circuit has adopted such a presumption in § 10(j) cases when the Board is "likely" to succeed on the merits, see Miller v. California Pac. Med. Ctr., 19 F.3d 449, 460 (9th Cir. 1994), this Court has not. A party seeking interim relief must independently satisfy each prong of the injunctive relief test. See, e.g., Maram v. Universidad Interamericana de P.R., 722 F.2d 953, 958 (1st Cir. 1983) (requiring a court to address the "whole panoply of discretionary issues"). We note that such a presumption does prevail in a § 10(l) case, however. See id.
 
 
 [10]
 The discussion later indicated, correctly, that although Fuchs was affirmed by this Court, it was actually a decision issued by the District Court for the District of Massachusetts.
 
 
 [11]
 Employees harmed by illegal action are considered to be made whole by final relief; § 10(j) injunctive relief is designed to protect the public interest in the collective bargaining process. Tomco Carburetor Co., 853 F.2d at 749.