853 F.2d 744
 129 L.R.R.M. (BNA) 2086, 109 Lab.Cas. P 10,663
 Victoria E. AGUAYO, Regional Director of the Twenty-First
Region of the National Labor Relations Board, for
and on Behalf of the NATIONAL LABOR
RELATIONS BOARD, Plaintiff-Appellant,
v.
TOMCO CARBURETOR COMPANY, Defendant-Appellee.
 No. 88-5618.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 8, 1988.
Decided Aug. 5, 1988.
 
 Joseph F. Frankl, Joseph E. Mayer, Asst. Gen. Counsel, and John W. Hornbeck, Deputy Asst. Gen. Counsel, N.L.R.B., Washington, D.C., for plaintiff-appellant.
 Kirk N. Sullivan, Cooper, Epstein & Hurewitz, Beverly Hills, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before PREGERSON, BOOCHEVER and THOMPSON, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 Victoria Aguayo, Regional Director of the National Labor Relations Board (the Board), appeals on behalf of the Board the denial of its petition for interim injunctive relief under section 10(j) of the National Labor Relations Act (the Act), 29 U.S.C. Sec. 160(j),[1] against Tomco Carburetor Co. (Tomco). The Board seeks an order reinstating eleven former Tomco employees who allegedly were discharged because of their union organizing activities. The district court denied the petition after finding that the Board did not show the "requisite necessity" for interim injunctive relief. The Board contends that the district court abused its discretion by concluding that reinstatement was not "just and proper." We agree, and, therefore, reverse the judgment and remand the action with instructions that the district court grant the relief sought by the Board.BACKGROUND
 
 
 2
 Tomco operates a carburetor rebuilding facility in Los Angeles that employs approximately 500 persons. On June 23, 1987, Javier Lomeli, a representative of the Teamsters Union Local 485, distributed leaflets at the Tomco facility as part of a union organizing campaign. The following day, Reuben Guerrero, a Tomco employee, contacted Lomeli and requested that Lomeli meet with him and several other Tomco employees who were interested in forming a union organizing committee at the Tomco facility. The other Tomco employees included Cesar Cruz, Salvador Delgado, Felix Gonzalez, Raul Mesa, Carlos Munoz, Fidel Perez, Carlos Romo, Jorge Toledo, and Otto Vargas.
 
 
 3
 Lomeli held several meetings with the organizing committee. He gave them union authorization cards. During the first two weeks of the campaign, the organizers turned in 176 authorization cards signed by Tomco employees.
 
 
 4
 On July 4, 1987, Cruz saw a Tomco supervisor observing a union meeting held at a local park. On four other occasions, various Tomco supervisory employees followed union organizing committee members to their meetings. In late July, Tomco foremen began to watch Cruz during his lunch break when he discussed the union with other employees and distributed union literature.
 
 
 5
 On July 20, one of the Tomco foremen asked Gonzalez what he thought of the union. Gonzalez responded that he did not know. The following day Gonzalez was discharged after he broke a carburetor part on which he was working. The supervisor told Gonzalez that he was terminated because he had been warned in the past not to damage parts. Gonzalez had received past warnings previously to be careful after he had damaged parts, but he had never been warned that he risked termination. Other workers had not been fired after they damaged carburetor parts.
 
 
 6
 On July 28, a Tomco foreman told Vargas and Toledo that they were being transferred to the welding department. Neither Vargas nor Toledo had any welding experience. Toledo offered to move to any other department but refused to transfer to the welding department because of his poor vision. The supervisor later fired them both for refusing to follow orders. Afterward, the two spoke to Jaime Alfaro, vice president of Tomco. He told them that they knew why they had been fired.
 
 
 7
 In late July or early August, Alfaro called a meeting of all the assembly department employees. He told them to throw away their "union cards" because the union was not going to come into the factory. He also warned them that employees "involved with the union would have problems with their work."
 
 
 8
 On August 7, all but one of the remaining committee members were fired assertedly because of a lack of work. When they inquired further, Alfaro or supervisory personnel told them either directly or indirectly that their firings resulted from their union activities or other support rendered to the union. There is some evidence that Tomco hired new employees around the same time as the terminations although Tomco denies this allegation.
 
 
 9
 On September 4, Alfaro fired Munoz, the last remaining union organizer. Earlier in the month Munoz had been transferred to the welding department from the assembly department. Alfaro later transferred Munoz back to his former assembly job after Munoz promised to cease his union activities. Alfaro fired Munoz on September 4 because of his continued involvement with the union. Lomeli eventually withdrew the representation petition after concluding that the union organizing committee had lost the support of Tomco's employees.
 
 
 10
 On December 14, the Board filed a petition for injunctive relief under Sec. 10(j) of the Act, 29 U.S.C. Sec. 160(j). The Board sought reinstatement of the eleven discharged union committee members and an injunction against any further harassment by Tomco against employees engaged in union organizing activities.
 
 
 11
 The district court accepted as true the allegations contained in the Board's petition and in the Board's supporting affidavits. The court observed that Tomco had engaged in "classic unfair labor practices" if there was any substance to the petition. The court, nonetheless, denied the petition after finding that, although the charges were serious, the Board failed to show the "requisite necessity to protect the purposes of the Act...." This appeal followed.
 
 DISCUSSION
 
 12
 Normally there is a significant delay before the Board issues its ruling in an unfair labor practice proceeding. Angle v. Sacks, 382 F.2d 655, 659-60 (10th Cir.1967) (quoting S.Rep. No. 105, 87th Cong., 1st Sess. 8, 27 (1947), which observes that it is often the case that many months pass before the Board completes its hearing and order procedure). Section 10(j) was enacted to provide interim injunctive relief so that the delay would not thwart the desired objective of the Act to protect the collective bargaining process. Id. Section 10(j) authorizes the Board to seek interim injunctive relief to preserve or to restore the status quo while the parties are awaiting a resolution of the unfair labor practice dispute by the Board. Johansen v. Queen Mary Restaurant Corp., 522 F.2d 6, 7 (9th Cir.1975) (per curiam); see also Angle, 382 F.2d at 660. The Board argues here that the public interest in maintaining the collective bargaining process will suffer irreparable injury unless the eleven union organizers are reinstated. Otherwise, Tomco will have succeeded in destroying the union organizational movement at the Tomco facility. We agree.
 
 
 13
 The district court is required to use a two-prong analysis in determining whether to issue an interim injunction under section 10(j). First, the court must determine whether there is reasonable cause to believe that an unfair labor practice occurred. San Francisco-Oakland Newspaper Guild v. Kennedy, 412 F.2d 541, 544 (9th Cir.1969) (setting out reasonable cause test under companion section 10(l), 29 U.S.C. Sec. 160(l));[2] accord Gottfried v. Frankel, 818 F.2d 485, 493 (6th Cir.1987). The district court's inquiry into the validity of the Board's unfair labor practice charge is confined to determining whether the factual allegations "are not insubstantial and frivolous." Kennedy v. Los Angeles Typographical Union No. 174, 418 F.2d 6, 8 (9th Cir.1969) (quoting San Francisco-Oakland Newspaper Guild, 412 F.2d at 544). Second, the court must determine whether the interim injunctive relief the Board seeks is "just and proper." 29 U.S.C. Sec. 160(j); see also Los Angeles Typographical Union No. 174, 418 F.2d at 8 (injunctive relief ordered must be "appropriate," i.e., just and proper); San Francisco-Oakland Newspaper Guild, 412 F.2d at 544 (same); accord Gottfried, 818 F.2d at 493-94 (injunctive relief ordered must be just and proper).
 
 
 14
 We review each prong of the analysis separately. When the district court grants the petition, we review under the clearly erroneous standard its decision that reasonable cause existed to believe that the Act was violated. See San Francisco-Oakland Newspaper Guild, 412 F.2d at 544-45. However, because of the congressional policy favoring the grant of section 10(j) injunctions, when the district court denies the petition, we review de novo its decision that reasonable cause did not exist. See Local No. 83, Constr. Bldg. Materials & Miscellaneous Drivers Union v. Jenkins, 308 F.2d 516, 517 n. 1 (9th Cir.1962); see also Kobell v. Suburban Lines, Inc., 731 F.2d 1076, 1084-85 (3d Cir.1984) (discussing split of authority between this circuit and other circuits on whether scope of review is plenary following denial of a 10(j) petition).
 
 
 15
 We review the "just and proper" prong of the section 10(j) analysis for abuse of discretion. Brown v. Pacific Telephone and Telegraph Co., 218 F.2d 542, 544 (9th Cir.1955); see also Kobell, 731 F.2d at 1089-90; Gottfried, 818 F.2d at 494; Boire v. Pilot Freight Carriers, Inc., 515 F.2d 1185, 1192 (5th Cir.1975), cert. denied, 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976). Although the district court has broad discretion in its determination of whether to grant 10(j) relief, its ruling is nonetheless subject to meaningful review to ensure consistency with the statutory purposes. Cf. Albemarle Paper Co. v. Moody, 422 U.S. 405, 416-17, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975) (district court's discretion to award relief under Title VII "must ... be measured against the purposes which inform [the Act]").
 
 A. Reasonable Cause
 
 16
 The district court did not specifically determine whether there was reasonable cause to believe that Tomco violated the Act.[3] Instead the court assumed the truth of the allegations contained in the Board's petition for interim injunctive relief under section 10(j). Having reviewed the record de novo, we conclude that there was reasonable cause to believe that Tomco committed the unfair labor practices alleged in the petition.
 
 
 17
 The Board's burden to establish reasonable cause to believe that an employer has violated the Act is minimal. Squillacote v. Graphic Arts Int'l Union, AFL-CIO, 540 F.2d 853, 858 (7th Cir.1976) (Board faces "relatively insubstantial burden of proof" to establish reasonable cause); Eisenberg v. Wellington Hall Nursing Home, Inc., 651 F.2d 902, 905 (3d Cir.1981) (Board bears a "low threshold of proof" to establish reasonable cause). The court must only find that the allegations contained in the Board's petition are not "insubstantial and frivolous." See Kennedy v. Los Angeles Typographical Union No. 174, 418 F.2d 6, 8 (9th Cir.1969) (quoting San Francisco-Oakland Newspaper Guild v. Kennedy, 412 F.2d 541, 544 (9th Cir.1969)).
 
 
 18
 In the instant matter, the Board submitted numerous affidavits in support of its contention that Tomco discharged the union organizers because of their union activities. If the allegations are true, Tomco clearly violated the Act. See NLRB v. Fort Vancouver Plywood Co., 604 F.2d 596, 600 (9th Cir.1979) (employer violates the Act by discharging employees because of their union activities), cert. denied, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980). The district court itself observed that the allegations contained in the Board's petition, if true, described "classic unfair labor practices" and were "very serious." Given the low threshold of proof section 10(j) imposes on the Board to establish reasonable cause to believe that the employer violated the Act, we conclude that the allegations contained in the Board's petition were not "insubstantial and frivolous." See Los Angeles Typographical Union No. 174, 418 F.2d at 8.[4] Accordingly, the reasonable cause requirement was satisfied. See id.
 
 B. Just and Proper
 
 19
 The Board has authority to order the reinstatement with backpay of workers who have been illegally discharged. 29 U.S.C. Sec. 160(c); see General Teamsters Local No. 162 v. NLRB, 782 F.2d 839, 844 (9th Cir.1986) (reinstatement and backpay are conventional remedies under the Act). However, this remedy is not always sufficient to protect the public interest in the integrity of the collective bargaining process because many months often pass before the Board actually renders its final order in an unfair labor practice proceeding. Angle v. Sacks, 382 F.2d 655, 659 (10th Cir.1967) (citing congressional language that relatively slow procedure of the Board falls short of objective of encouraging collective bargaining when passage of time undermines effectiveness of Board's final decision); Eisenberg v. Wellington Hall Nursing Home, Inc., 651 F.2d 902, 906-07 (3d Cir.1981) (public interest in the integrity of collective bargaining process warrants interim injunctive relief pending resolution of unfair labor practice charges). Interim reinstatement[5] is just and proper where an employer has terminated an employee for union activities because such a termination has a "serious adverse impact on employee interest in unionization." Eisenberg, 651 F.2d at 907 (quoting Kaynard v. Palby Lingerie, Inc., 625 F.2d 1047, 1053 (2d Cir.1980)); Kobell v. Suburban Lines, Inc., 731 F.2d 1076, 1094 (3d Cir.1984) (presumption that ultimate reinstatement is unlikely to vindicate adequately the remedial powers of the Board); see also Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 938 (9th Cir.1987) (examines rationale for interim reinstatement under the Act for application to similar context under Railway Labor Act and concludes that "damages and [subsequent] reinstatement would not remedy the coercive inhibitory effects upon the employees' organizational rights").
 
 
 20
 Here the district court, without explanation, concluded that the Board failed to show the "requisite necessity" to justify interim relief. It is not clear how the court arrived at this conclusion nor what it meant by "requisite necessity." The record before us shows that the interest in the union's organizational program at Tomco ended with the firing of the eleven union committee members. If the discharged employees who served as union committee members must wait until the Board's final order, which according to counsel will not be issued for another year, they most likely will have found work elsewhere. An order of reinstatement would then be an "empty formality." Angle v. Sacks, 382 F.2d 655, 660 (10th Cir.1967) (quoting district court). Although the individual employees might benefit from an order of backpay, Tomco will have succeeded in removing the union organizers and the union from its facility. This is precisely the situation Congress sought to avoid by enacting section 10(j). See id. at 660-61.
 
 
 21
 Tomco contends that the Board failed to show that the district court abused its discretion in denying interim injunctive relief. Although the district court has broad discretion to protect the public interest, its ruling is nonetheless subject to meaningful review to ensure consistency with the statutory purposes of the Act. See Albemarle Paper Co. v. Moody, 422 U.S. 405, 416-17, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975). Given the public interest in maintaining the integrity of the collective bargaining process, on the record before us, it was an abuse of discretion for the court to conclude that reinstatement of employees discharged for union organizing activities was not just and proper. See Brown v. Pacific Telephone and Telegraph Co., 218 F.2d 542, 544 (9th Cir.1954) (abuse of discretion shown where passage of time during interim period may result in irreparable harm of employees drifting away from union); Wellington Hall Nursing Home, Inc., 651 F.2d at 907 (failure of district court to recognize irreparable harm to employee interest in unionization by discharging union supporters is an abuse of discretion).
 
 
 22
 Tomco makes two additional arguments in support of the district court's ruling. First, Tomco relies on a line of cases denying section 10(j) relief because the Board delayed filing its petition. See Boire v. Pilot Freight Carriers, Inc., 515 F.2d 1185, 1193 (5th Cir.1975) (delay by Board in filing petition was evidence that the detrimental effects of the discharges have already taken their toll such that reinstatement would probably be no more effective than final Board order), cert. denied, 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976); Siegel v. Marina City Co., 428 F.Supp. 1090, 1093 (C.D.Cal.1977) (section 10(j) injunctive relief not just and proper because, among other reasons, the Board waited three months before filing petition and proceedings before administrative law judge were about to begin). Tomco argues that interim reinstatement is not proper in the instant case because the Board delayed for four months before filing its petition. It argues that interim reinstatement would be of no avail here because the alleged harm has already occurred.
 
 
 23
 This argument is not persuasive. Delay by itself is not a determinative factor in whether the grant of interim relief is just and proper. Gottfried v. Frankel, 818 F.2d 485, 495 (6th Cir.1987) (court not required to consider delay). Delay is only significant if the harm has occurred and the parties cannot be returned to the status quo or if the Board's final order is likely to be as effective as an order for interim relief. Id.; Solien v. Merchants Home Delivery Service, Inc., 557 F.2d 622, 627 (8th Cir.1977). Although interim reinstatement may not precisely restore the status quo in the case before us, it would revive the union's organizational campaign at Tomco. Moreover, the Board's four-month delay, given its extensive backlog, was not by itself unreasonable. Indeed, the Board needs a reasonable period of time to investigate and deliberate before it decides to bring a section 10(j) action. See Maram v. Universidad Interamericana de Puerto Rico, 722 F.2d 953, 960 (1st Cir.1983) (finding that Board's four month delay in filing 10(j) petition acceptable because "[a] busy administrative agency cannot operate overnight").
 
 
 24
 Second, Tomco argues that equitable considerations make reinstatement unjust and improper because reinstatement would require Tomco to reorganize its operations and discharge eleven "innocent" workers. This argument fails on two grounds. First, the predominant focus under section 10(j) is the harm to the bargaining process, not to individual employees. Kobell v. Suburban Lines, Inc., 731 F.2d 1076, 1093 (3d Cir.1984). Second, to the extent Tomco has hired new workers, the rights of the employees who were discriminatorily discharged are superior to the rights of those whom the employer hired to take their places. See Maram, 722 F.2d at 959-60. Accordingly, the district court abused its discretion in denying the Board's petition for 10(j) relief.
 
 C. Remand
 
 25
 Having decided that the district court erred in denying the Board's section 10(j) petition, we must now decide what is required of the district court on remand. Tomco argues that it is appropriate for us to remand the action for the district court to make a finding on the existence of reasonable cause. At the hearing before the district court, the court suggested that it would allow Tomco to cross-examine the discharged employees were it inclined to grant the petition. Tomco suggests that on remand the district court should allow Tomco to cross-examine the employees on the affidavit evidence that appears to establish reasonable cause.
 
 
 26
 There is no need to follow this suggestion because our de novo review of the record convinces us that the minimal burden that the Board must carry to establish reasonable cause has been more than satisfied. Cf. Gottfried v. Frankel, 818 F.2d 485, 493 (6th Cir.1987) (evidentiary hearing not required because evidence available to district court was sufficient to establish reasonable cause to believe unfair labor practices occurred). Indeed, Tomco all but conceded at oral argument that the Board satisfied this portion of the section 10(j) analysis. Accordingly, we remand the action with instructions that the district court issue an order requiring interim reinstatement of the eleven former Tomco employees who were discharged because of their union activities. See Brown v. Pacific Telephone and Telegraph Co., 218 F.2d 542, 544 (9th Cir.1955) (where the law entitles the Board to the injunctive relief sought, district court directed to grant the relief); Eisenberg v. Wellington Hall Nursing Home, Inc., 651 F.2d at 907 (district court directed to enter order of reinstatement).
 
 CONCLUSION
 
 27
 The district court's judgment is REVERSED. We remand to the district court for an order granting the Board's section 10(j) petition.
 
 
 
 [1]
 Section 10(j) provides:
 The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.
 29 U.S.C. Sec. 160(j) (1982) (emphasis added).
 
 
 [2]
 Section 10(l) provides district courts with the power to temporarily enjoin unfair labor practices that impinge upon the public interest in the free flow of commerce (i.e., strikes and boycotts). 29 U.S.C. Sec. 160(l); Eisenberg v. Hartz Mountain Corp., 519 F.2d 138, 141 (3d Cir.1975). Section 10(j) creates jurisdiction to grant temporary relief pending the Board's decision upon any unfair labor practice charge, even though no disruption of commerce is charged. Id. The major distinction between the two provisions is that the Board must seek interim injunctive relief under section 10(l), while the Board has discretion to seek interim injunctive relief under section 10(j). Kobell v. Suburban Lines, Inc., 731 F.2d 1076, 1084 n. 13 (3d Cir.1984)
 The analysis under both sections is identical. See id. at 1084; Eisenberg v. Wellington Hall Nursing Homes, Inc., 651 F.2d 902, 905 (3d Cir.1981); Seeler v. Trading Port, Inc., 517 F.2d 33, 36 n. 5 (2d Cir.1975); Boire v. Int'l Bhd. of Teamsters, 479 F.2d 778, 787 n. 7 (5th Cir.) reh'g denied, 480 F.2d 924 (1973).
 
 
 [3]
 Unlike the "just and proper" requirement, the "reasonable cause" requirement cannot be found in the language of section 10(j) of the Act. 29 U.S.C. Sec. 160(j). The "reasonable cause" standard, developed in cases arising under section 10(l) of the Act, is also applicable to section 10(j) proceedings to ensure that courts do not attempt to resolve the legal issues that underlie the petition. Kobell v. Suburban Lines, Inc., 731 F.2d 1076, 1083 (3d Cir.1984) ("reasonable cause standard bars the district court from behaving as if it had general jurisdiction over nation's labor laws"); Boire v. Int'l Bhd. of Teamsters, 479 F.2d 778, 792 (5th Cir.) (reasonable cause requirement ensures that district court does not engage in disposition of legal issues involved in underlying unfair labor practice proceedings), reh'g denied, 480 F.2d 924 (1973)
 
 
 [4]
 In addition, the Board in its petition made other allegations that Tomco violated the Act. These other allegations also satisfy the reasonable cause requirement. For example, Tomco made veiled threats of reprisals against its employees for becoming involved in the union. If true, these threats violated section (8)(a)(1) of the Act, 29 U.S.C. Sec. 158(a)(1). See NLRB v. Ayer Lar Sanitarium, 436 F.2d 45, 49 (9th Cir.1970). Similarly, if Tomco engaged in surveillance of its employees' union activities or created the impression of such surveillance, it violated the Act. See NLRB v. Anchorage Times Publishing Co., 637 F.2d 1359, 1365-66 (9th Cir.), cert. denied, 454 U.S. 835, 102 S.Ct. 137, 70 L.Ed.2d 115 (1981); NLRB v. Randall P. Kane, Inc., 581 F.2d 215, 218 (9th Cir.1978)
 
 
 [5]
 Interim reinstatement, like all relief under section 10(j), remains in effect until the Board renders its final order. Cf. Angle v. Sacks, 382 F.2d 655, 661 (10th Cir.1967)