899 F.2d 1557
 134 L.R.R.M. (BNA) 2118, 114 Lab.Cas. P 12,057
 John D. NELSON, Regional Director of the Nineteenth Region
of the National Labor Relations Board for and on
behalf of the National Labor Relations
Board, Petitioner-Appellee,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION
NO. 46, AFL-CIO, Respondent-Appellant.
John D. NELSON, Regional Director of the Nineteenth Region
of the National Labor Relations Board for and on behalf of
the National Labor Relations Board; National Electrical
Contractors Association, Puget Sound Chapter, Petitioners-Appellees,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION
NO. 46, AFL-CIO, Respondent-Appellant.
 Nos. 88-4455, 88-4459.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 4, 1989.
Decided April 2, 1990.
 
 Hugh Hafer of Hafer, Price, Rinehart & Schwerin, Seattle, Wash., for respondent-appellant.
 Ellen A. Farrell, Washington, D.C., for petitioner-appellee, John D. Nelson.
 Mark E. Thierman, San Francisco, Cal., for petitioner-appellee, National Elect. Contractors Ass'n, Puget Sound Chapter.
 Appeal from the United States District Court for the Western District of Washington.
 Before CANBY, WIGGINS and FERNANDEZ, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 We have before us two appeals that have been consolidated. The first is an appeal by the International Brotherhood of Electrical Workers Local Union No. 46, AFL-CIO ("the Union") from an order of the district court granting a temporary injunction against the Union pursuant to section 10(l ) of the National Labor Relations Act ("the Act"), as amended, 29 U.S.C. Sec. 160(l ). The second is an appeal by the Union from a stay of its suit to enforce an arbitration award under section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185. We affirm both orders with slight modifications to the injunction.
 
 Facts
 
 2
 The facts are not in dispute. The appellant is a labor union representing electricians in the Seattle-Tacoma area. The appellee, the Puget Sound Chapter of the National Electrical Contractors Association ("the Chapter") is an association of electrical contractors in the same region. The Chapter's members include both union and nonunion contractors. As part of its services, the Chapter negotiates a multi-employer collective bargaining agreement with the Union. The Chapter itself, however, does not engage in any electrical contracting, nor does it employ electricians to perform electrical craft work.
 
 
 3
 In 1986, the Union and the Chapter negotiated a collective bargaining agreement ("Agreement") covering "all inside electrical construction work and workers within the territorial jurisdiction" of the Union. The Chapter signed the Agreement and made it applicable to all individual electrical contractors who signed a letter of assent to be bound thereby. The 1986 Agreement ran through May 31, 1988. The parties negotiated a successor agreement covering the period from June 1, 1988 through May 31, 1991.
 
 
 4
 The Agreement provided that the "Union shall be the sole and exclusive source of referral of applicants for employment." It also provided that the Union would administer a joint labor-management apprenticeship and training program and a hiring hall from which applicants would be referred. Any disputes under the Agreement were to be resolved by the Council for Industrial Relations ("CIR"), a joint union-management arbitration board.[1]
 
 
 5
 The Chapter had been operating a referral system to provide its nonunion members with qualified electricians since 1985. It also offered an apprenticeship training program for its nonunion members. Nearly two years after signing the Agreement, the Union filed a grievance against the Chapter, alleging that the Chapter violated the Agreement by continuing to refer applicants for employment to its nonunion members and by establishing and operating a nonunion apprenticeship program.
 
 
 6
 The Chapter responded by filing six charges of unfair labor practices with the National Labor Relations Board (NLRB), claiming that the Union's use of the grievance procedure to ensure the exclusivity of its referral program violated sections 8(b) and 8(e) of the National Labor Relations Act, 29 U.S.C. Sec. 158(b) and (e). The Chapter also filed for injunctive relief in the district court under section 301, seeking to stay arbitration of the Union's grievance until the NLRB ruled on the Chapter's claims. The district court denied the injunction.
 
 
 7
 The CIR issued its arbitration award in favor of the Union, ruling that the Chapter's referral program violated its agreement to support and participate in the Union's apprenticeship and referral programs. Thereafter, the Chapter's Executive Board decided to comply with the arbitration ruling, pending judicial review, and the Chapter ceased referring electricians to its nonunion members. As a result, some nonunion contractors left the Chapter.
 
 
 8
 The Chapter then filed an amended complaint in its section 301 suit before the district court, adding a claim under section 303, seeking to vacate the arbitration award and asking for damages resulting from any harm caused by the CIR award. In its answer to the amended complaint, the Union sought enforcement of the arbitration award under section 301.
 
 
 9
 The Regional Director for the NLRB then filed a petition seeking a preliminary injunction under section 10(l ) of the National Labor Relations Act, 29 U.S.C. Sec. 160(l ), to prevent the Union from enforcing the CIR award. The district court found reasonable cause to believe that the Union's interpretation of the collective bargaining agreement, as upheld by the CIR, violated section 8(e) of the Act. The court also determined that the preliminary injunctive relief requested by the NLRB was just and proper. Accordingly, the district court ordered the Union to cease and desist, pending a final resolution of the unfair labor practice proceedings before the NLRB, from: (1) attempting to enforce the Agreement in a manner that would preclude the Chapter from providing referral services to nonunion members; (2) attempting to force the Chapter or its nonunion members to make payments into the Joint Apprenticeship Training Committee based on employee work hours; or (3) attempting to coerce, restrain or threaten the Chapter, its nonunion members, or any other person in commerce with the object of forcing compliance with the CIR award. The district court then consolidated the 10(l ) action with the section 301/303 action and stayed both proceedings pending a final NLRB ruling.
 
 Analysis
 I. Section 10(l ) Claim
 
 10
 A. Standards for Issuance and Review of An Injunction Under Section 10(l )
 
 1. The District Court Standard
 
 11
 Section 10(l ) requires the Regional Director to seek injunctive relief in the federal courts when he has reason to believe that certain unfair labor practices, including those proscribed by section 8(e) of the Act, have occurred.[2] Retail Clerks Local 137 v. Food Employers Council, Inc., 351 F.2d 525, 531 (9th Cir.1965). In evaluating a petition for section 10(l ) relief, the district court must determine whether there is "reasonable cause to believe" that the violation charged has been committed, and whether the issuance of an injunction is "just and proper." Aguayo v. Tomco Carburetor Co., 853 F.2d 744, 747 (9th Cir.1988).
 
 
 12
 The district court may find "reasonable cause" where "the factual allegations and propositions of law underlying the Regional Director's petition are not insubstantial and frivolous." San Francisco-Oakland Newspaper Guild v. Kennedy, 412 F.2d 541, 544 (9th Cir.1969); see also Aguayo, 853 F.2d at 748. The evidence presented need not establish a violation of the Act. "It is sufficient to sustain the District Court's finding and conclusion if there be any evidence which together with all of the reasonable inferences that might be drawn therefrom supports a conclusion that there is reasonable cause to believe that a violation had occurred." Local 83. Construction, Building Materials and Miscellaneous Drivers v. Jenkins, 308 F.2d 516, 517-18 (9th Cir.1962), quoting Madden v. International Hod Carriers', Local 41, 277 F.2d 688, 692 (7th Cir.1960).
 
 
 13
 The issuance of an injunction is "just and proper" where it is "necessary to prevent a frustration of the remedial purposes of the Act." Scott v. El Farra Enterprises, Inc., 863 F.2d 670, 674 (9th Cir.1988). Thus, the district court must evaluate the injunction for "consistency with the statutory purposes." Aguayo, 853 F.2d at 748.
 
 2. The Standard of Appellate Review
 
 14
 The appropriate standard for reviewing the district court's finding of "reasonable cause" in this case is somewhat unclear. We determine whether the district court's findings of fact are "clearly erroneous," see San Francisco-Oakland Newspaper Guild, 412 F.2d 541 at 544-45, but we have not addressed the proper standard of review when the case, as this one, involves only matters of law. In San Francisco-Oakland Newspaper Guild, however, we applied the "clearly erroneous" standard only after distinguishing that case from McLeod v. Business Machine and Office Appliance Mechanics Conference Board Local 459, 300 F.2d 237 (2d Cir.1962), which we described as a case involving "only a question of law." 412 F.2d at 545 n. 2. In McLeod, the Second Circuit reviewed the legal component of the reasonable cause standard to determine whether the district court judge "was wrong, not whether he was 'clearly' so." McLeod, 300 F.2d 237, 239 (quoting Empresa Hondurena de Vapores, S.A. v. McLeod, 300 F.2d 222 (2d Cir.1962)). We agree that this is the proper standard of review when the reasonable cause inquiry raises only legal issues. Thus, we review de novo the district court's ruling that the Regional Director's legal theory is "not insubstantial and frivolous."
 
 
 15
 We review the district court's determination that the issuance of the injunction was "just and proper" for abuse of discretion. Aguayo, 853 F.2d at 748.
 
 B. Reasonable Cause
 
 16
 The Regional Director alleged that the Agreement, as interpreted by the CIR arbitration panel, violates Section 8(e). He further alleged that the Union's filing of the grievance which led to the CIR award and later efforts to enforce the award constitute unfair labor practices. The district court found reasonable cause to believe these allegations. We agree.
 
 
 17
 Section 8(e) of the Act provides, in pertinent part:
 
 
 18
 It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases ... or agrees ... to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforceable and void.[3]
 
 
 19
 It is the Regional Director's theory that the collective bargaining agreement, as interpreted by the CIR, violates section 8(e) because in it the Chapter agrees with the Union that the Chapter will not do the business of referral or apprentice training with its nonunion employer-members.
 
 
 20
 Section 8(e) reaches only "secondary" activity; it does not affect the rights of employees with respect to their primary employers. Our threshold inquiry, then, is whether the agreement here is secondary. A lawful primary agreement "is addressed to the labor relations of the contracting employer vis-a-vis his own employees." National Woodwork Manufacturers Assn. v. NLRB, 386 U.S. 612, 645, 87 S.Ct. 1250, 1268-69, 18 L.Ed.2d 357 (1967). Thus, an employer may lawfully agree to cease doing business with another employer if the agreement relates to the working conditions of unit employees. Id. at 645-46, 87 S.Ct. at 1268-69. In contrast, a prohibited secondary agreement is one "tactically calculated to satisfy union objectives elsewhere." Id. at 644, 87 S.Ct. at 1268.
 
 
 21
 Here, the Union does not represent the Chapter's employees or the employees of the Chapter's nonunion members. In addition, the Chapter's employees perform no electrical craft work. Therefore, the Agreement was not designed to protect the jobs of unit employees. Rather, it affected neutrals--the Chapter's nonunion members. The Union's apparent aim in entering the Agreement and pursuing enforcement of the CIR award is to force the Chapter to sever its relationship with its nonunion members in order to encourage those employers to employ union workers. The CIR award did, in fact, compel the Chapter to cease providing employee referral and apprenticeship training services to its nonunion members.[4] As a consequence, several of the Chapter's nonunion members have resigned their membership. In light of these facts, we conclude that the Regional Director's contention that this was a secondary agreement is neither insubstantial nor frivolous.
 
 
 22
 The Union argues nevertheless that because the Chapter is bound by the terms of the Agreement it may be held to the Agreement's provisions without violating section 8(e). Whether or not the Chapter is a party to the Agreement is irrelevant because, as we noted above, the Chapter has no employees that are subject to the Agreement. Consequently, there is no work preservation purpose for the Union's insisting that the Chapter stop operating a hiring hall or apprenticeship program for nonunion employers. The Regional Director therefore had substantial support for his claim that the agreement, as interpreted by the CIR, violates section 8(e).
 
 
 23
 The Union asserts, however, that the Supreme Court's decision in Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983), precludes a finding that the Union, by invoking the grievance-arbitration procedure to enforce the CIR award, committed an unfair labor practice. Bill Johnson's held that the NLRB cannot enjoin, as an unfair labor practice, an employer's state court lawsuit unless the suit is filed with an unlawful motive and without a reasonable basis in fact and law. 461 U.S. at 748-49, 103 S.Ct. at 2172-73. In a footnote, however, the Court distinguished the case before it from one in which the contested suit "has an objective that is illegal under federal law." Id. at 737 n. 5, 103 S.Ct. at 2167 fn. 5. Relying on this footnote, subsequent NLRB decisions have found it an unfair labor practice to sue to enforce a contract provision that violates section 8(e). In International Union of Elevator Constructors Local No. 3 (Long Elevator and Machine Co., Inc.), 289 NLRB 132, 139 LRRM 1066 (July 22, 1988), for example, the Board held that a Union violated section 8(b)(4)(ii)(A) where the interpretation of the collective-bargaining agreement it urged in a grievance would have violated section 8(e). The Board stated:
 
 
 24
 Because we have concluded that the contract clause as construed by the Respondent would violate Section 8(e), we may properly find the pursuit of the grievance coercive, notwithstanding the Supreme Court's decision in Bill Johnson's Restaurants v. NLRB, 461 U.S. 731 [103 S.Ct. 2161, 76 L.Ed.2d 277] (1983). Although holding that the Board could not enjoin, as an unfair labor practice, the lawsuit at issue in that case, the Court expressly noted that it was not dealing with a 'suit that has an objective that is illegal under federal law.' 461 U.S. at 737 fn. 5 [103 S.Ct. at 2167 fn. 5]. See also Teamsters Local 705 v. NLRB (Emery Air Freight), 820 F.2d 448 (D.C.Cir.1987) (distinguishing between having an unlawful motive in bringing a lawsuit and seeking to enforce an unlawful contract provision).
 
 
 25
 129 LRRM at 1067. Thus, because there are substantial grounds to believe the Agreement, as construed by the Union, violates section 8(e), Bill Johnson's does not preclude the Board or the court from enjoining the Union's attempts to enforce the contract.
 
 C. Just and Proper
 
 26
 In Retail Clerks Local 137 v. Food Employers Council, Inc., 351 F.2d 525 (9th Cir.1965), we stated:
 
 
 27
 Section 10(l ) reflects a Congressional determination that the unfair labor practices enumerated therein are so disruptive of labor-management relations and threaten such danger of harm to the public that they should be enjoined whenever a district court has been shown reasonable cause to believe in their existence and finds that the threatened harm or disruption can best be avoided through an injunction.
 
 
 28
 351 F.2d at 531 (emphasis in original). Here, reasonable cause was shown and harm was threatened or caused. The Chapter was forced, under the CIR award, to discontinue some of its services, and several nonunion members resigned as a result. Section 10(l ) was designed to stop such secondary interruptions in commerce that are disruptive of labor-management relations. In granting the injunction, the district court was promoting the statutory purposes of the Act. For these reasons we conclude that the district court did not abuse its discretion in finding it just and proper to enjoin enforcement of the arbitration award until the NLRB has ruled on the unfair labor practice claim. The section 10(l ) injunction was proper.
 
 II. Stay of the Section 301 Action[5]
 
 29
 The Union's principal contention is that the district court erred in refusing to hear its section 301 claims until the NLRB decided the issue in an unfair labor practice proceeding. The Union suggests that this dispute is a contract matter concerning the rights and duties of the parties under the Agreement, and that it properly belongs in the district court.[6] We do not agree that the district court abused its discretion by staying the section 301 action.
 
 
 30
 The NLRB and the district courts share concurrent jurisdiction over disputes involving both allegations of unfair labor practices and violations of a collective bargaining agreement. See Toyota Landscape Co., Inc. v. Building Material & Dump Truck Drivers Local 420, 726 F.2d 525, 527 (9th Cir.1984), cert. denied, 469 U.S. 825, 105 S.Ct. 104, 83 L.Ed.2d 49 (1984). Consequently, in a case such as this, the court has the discretion to review the arbitrator's award or to stay enforcement of the award pending the NLRB's decision on the unfair labor practice claims. See Central Valley Typo. Union No. 46 v. McClatchy News., 762 F.2d 741 (9th Cir.1985).
 
 
 31
 We consider several factors in determining which forum should exercise primary jurisdiction where such concurrent jurisdiction exists. Generally, the district court has primary jurisdiction under section 301 over labor disputes involving primarily a question of contract interpretation, IBEW Local 532 v. Brink Construction Co., 825 F.2d 207, 213-14 (9th Cir.1987). The NLRB has primary jurisdiction to construe the Act and "determine what is or is not an unfair labor practice." Kaiser Steel, 455 U.S. at 83, 102 S.Ct. at 859. This division of responsibility is due primarily to the judiciary's historical deference to specialized agencies in complex policy matters under the agencies' purview. In Burke v. French Equipment Rental, Inc., 687 F.2d 307 (9th Cir.1982), we declined to hold that the district court should entertain a section 8(e) defense in a section 301 proceeding where, in a parallel proceeding, the NLRB had twice dismissed section 8(e) allegations. We reasoned:
 
 
 32
 The desire to protect the primary jurisdiction of the NLRB flows from the need to maintain centralized administration of the NLRA by a specialized agency. Labor law involves many difficult questions of policy best left to the agency that has the expertise needed to solve them.
 
 
 33
 687 F.2d at 311.
 
 
 34
 These factors weigh in favor of upholding the primary jurisdiction of the NLRB in this case. First, both proceedings involve the CIR award, and the issue in the Section 301 action--whether to enforce or vacate the CIR award--turns on the validity of the award under section 8(e). Therefore, the issues in the two actions are inextricably linked. Second, it is likely that the NLRB's decision in the section 8(e) action would be issue-preclusive in the section 301 action. Third, the initial investigative finding of the NLRB directly contradicts the ruling of the CIR, so there is a strong likelihood of a conflict between the ultimate NLRB ruling and the arbitral award. Finally, by restoring the Chapter's ability to provide its services to its non-union members, the injunction preserves the status quo.
 
 
 35
 The district court did not abuse its discretion in staying the section 301 action.
 
 III. Scope of the District Court's Injunction
 
 36
 The district court's injunction prohibits the Union from attempting "to coerce, restrain, or threaten the Puget Sound Chapter, the nonunion firms, or any other person engaged in commerce or an industry affecting commerce with the object of forcing compliance with the CIR's arbitration award." The Union claims that this injunction is overbroad because it enjoins conduct which has not occurred or been threatened. We agree.
 
 
 37
 A court must limit the conduct it enjoins to that which is found to have been "pursued [or] persuasively to be related to the proven unlawful conduct." NLRB v. Express Publishing Co., 312 U.S. 426, 433, 61 S.Ct. 693, 698, 85 L.Ed. 930 (1941). Using this standard, the Supreme Court in Communications Workers v. NLRB, 362 U.S. 479, 80 S.Ct. 838, 4 L.Ed.2d 896 (1960), struck part of an NLRB order requiring a union to refrain from coercing employees of "any other employer" where the NLRB had found that the union had coerced only the employees of the named employer.
 
 
 38
 In this case, the General Counsel has accused the Union only of filing an improper grievance against the Chapter and pursuing that grievance in federal court. There is no evidence before the court that the Union engaged in any other conduct aimed at coercing compliance with its interpretation of the Agreement by the Chapter or by any other party. Thus, the conduct enjoined by the district court goes beyond that "persuasively related" to the Union's efforts to enforce the CIR's arbitration award through the grievance procedure. Consequently, we modify the injunction by deleting that part that refers to "nonunion firms, or any other person engaged in commerce or an industry affecting commerce."
 
 
 39
 INJUNCTION AFFIRMED AS MODIFIED.
 
 
 40
 STAY AFFIRMED.
 
 
 
 [1]
 Under the successor agreement, the last level of appeal in the grievance procedure is before an arbitrator, rather than the Council for Industrial Relations
 
 
 [2]
 Section 10(l ) provides, in relevant part:
 Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(a)(B), or (C) of section 158(b) of this title, or section 158(e) of this title or section 158(b)(7) of this title, the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the office or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law....
 29 U.S.C. Sec. 160(l ).
 
 
 [3]
 The petition in this case alleged that the Union's conduct in filing the grievance and pursuing the arbitration against the Chapter violated Section 8(b)(4)(ii)(A) as well as Section 8(e). Section 8(b)(4)(ii)(A) makes it an unfair labor practice for a union
 (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where ... an object thereof is:
 (A) forcing or requiring an employer or self-employed person ... to enter into any agreement which is prohibited by [Section 8(e) ].
 The violation of section 8(b)(4)(ii)(A) is dependent upon the 8(e) allegation in that the coercion proscribed by section 8(b)(4)(ii)(A) must have as its object forcing the employer into an agreement prohibited by 8(e). Thus, the 8(b)(4) issue necessarily rises or falls on the 8(e) question. We therefore confine our discussion to the section 8(e) issues.
 
 
 [4]
 This award satisfies the "cease doing business" requirement of section 8(e). The term "cease doing business" includes disruptions and changes in the method of doing business short of a total cessation of business. See, e.g., NLRB v. Operating Engineers, Local 825 (Burns & Roe), 400 U.S. 297, 304-05, 91 S.Ct. 402, 407-08, 27 L.Ed.2d 398 (1971)
 
 
 [5]
 The Chapter has raised some questions concerning the appealability of the stay issued in the section 301 suit. Although we have ruled that we do not have jurisdiction over appeals from stays pending, or orders compelling, arbitration, see Abernathy v. Southern California Edison, 885 F.2d 525 (9th Cir.1989), we have not determined the appealability of a stay of an action to enforce an arbitral ruling. Without expressing an opinion on the general question of the appealability of a stay of a section 301 action, we believe that the issues raised in the section 10(1 ) and section 301 cases here are so intertwined that we must uphold the stay of the section 301 action in order to give any effect to the section 10(1 ) injunction
 
 
 [6]
 The Union attempts to support his argument by quoting the Supreme Court's opinion in Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982):
 where a Sec. 8(e) defense is raised by a party which Sec. 8(e) was designed to protect, and where the defense is not directed to a collateral matter but to the portion of the contract for which enforcement is sought, a court must entertain the defense.
 455 U.S. at 86, 102 S.Ct. at 861.
 The Union quoted this language out of context. In Kaiser, the district court decided to enforce a contract without determining first whether that contract violated federal law. The Supreme Court ruled that before enforcing the contract, the district court must entertain a section 8(e) defense raised by one of the parties. Here, in contrast, the district court did not decide to enforce the Agreement, only to stay enforcement of the CIR award pending agency review.
 In Burke v. French Equipment Rental, Inc., 687 F.2d 307, 311 (9th Cir.1982), we addressed the Kaiser opinion:
 No doubt Kaiser makes clear that in at least some circumstances it will be incumbent upon the court to consider a proffered Sec. 8(e) defense. But we find no indication in Kaiser that the Court meant to sweep away the entire jurisprudence of judicial deference to the expertise of the NLRB.
 Thus, the district court has the jurisdiction to decide section 8(e) defenses, but Kaiser does not require it to do so.