Sandra DUNBAR, Regional Director of the Third Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

LANDIS PLASTICS, INC., Respondent.

No. CIV.A. 96–CV–1765 (RSP/DNH).

United States District Court,
N.D. New York.

March 4, 1998.

National Labor Relations Board, Region Three, (Beth Mattimore, Doren Goldstone, of Counsel), Buffalo, NY, for Petitioner.

Satter & Connor, (Mairead E. Connor, of Counsel), Syracuse, for United Steelworkers of America, AFL–CIO

Bond, Schoeneck & King, (Thomas G. Eron, of Counsel), Syracuse, NY, Seyfarth, Shaw, Fairweather & Geraldson (Richard B. Lapp, Douglas A. Darch, Andrew M. Altschul, of Counsel), Chicago, IL, for Respondent.

## MEMORANDUM–DECISION AND ORDER

POOLER, District Judge.

## INTRODUCTION AND BACKGROUND

Petitioner Sandra Dunbar, regional director of the third region of the National Labor Relations Board ("NLRB"), initiated proceedings in this action against respondent Landis Plastics, Inc. ("Landis") pursuant to Section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j). In this memorandum-decision and order, I will dispose of all issues presently remaining in the case. Those issues are (1) Landis' motion for reconsideration of my memorandum-decision and order dated September 3, 1997, Dkt. No. 96; (2) Landis' motion to strike the appearance of attorneys representing the United Steelworkers of America, Dkt. No. 127; and (3) the merits of the underlying petition for injunctive relief, Dkt. No. 72.

Because of the complex procedural posture of this litigation, I will discuss relevant facts in each portion of my analysis. I note generally, however, that Landis is a plastics manufacturing plant employing approximately 250 people and located in Solvay, New York. In mid-April 1996, local representatives of the United Steelworkers of America, AFL–CIO, union ("United Steelworkers") began a drive to organize the plant. Throughout the organizing campaign, incidents between union

supporters and management took place, one of which allegedly culminated in an employee's discharge. The incidents formed the basis of an NLRB investigation that began in late spring. The NLRB issued a Second Amended Consolidated Complaint and Notice of Hearing on October 25, 1996, in which it alleged that Landis engaged in unfair labor practices throughout the union organizing drive. In response to additional unfair labor practice charges by the union, the NLRB issued Third, Fourth and Fifth amended consolidated complaints, with the latest action taking place on July 22, 1997. Hearings on the merits of the NLRB's charges took place before an administrative law judge ("ALJ") in August and September 1997. The parties are scheduled to submit legal arguments to the ALJ in March 1998, and the judge's decision then will be forthcoming. Letter of Beth Mattimore of 2/3/98, Dkt. No. 158.

## DISCUSSION

### I. Motion for reconsideration

#### A. Background

By a memorandum-decision and order filed on September 3, 1997, I granted the NLRB's motion to resume its Section 10(j) proceedings, which had been discontinued during settlement discussions, allowed the NLRB to amend its petition, denied several Landis discovery requests, and set forth the legal standard by which I would analyze the merits of the petition for injunctive relief. Dkt. No. 71 (the "September 3 Order"). On September 17, 1997, Landis filed a motion for reconsideration of my decision and sought discovery, an evidentiary hearing, and additional briefing on the merits. Dkt. No. 96. Notably, Landis did not object to the Section 10(j) legal standard, which necessarily affects the scope of relevant discovery.[1] *See* September 3 Order at 8. Both the NLRB and United Steelworkers opposed the reconsideration request and pointed out its procedural

---

**1.** In a so-called request to supplement its motion for reconsideration, counsel for Landis discussed the applicable standard with particular emphasis on the irreparable injury component of the analysis. Dkt. No. 132. Although defendant's submission of this letter is procedurally improper, I have considered it.

infirmities.[2] I choose, however, to consider the request for reconsideration in the interest of providing Landis with the fullest opportunity to present its views.

## B. Analysis

■■■ Landis argues first that it is entitled to additional discovery and an evidentiary hearing to determine whether reinstating former Landis employees Kathy Saumier and Clara Sullivan is appropriate injunctive relief. Its request rests on an incomplete statement of the applicable legal standard, because Landis argues that the NLRB must establish reasonable cause to believe that the terminations were unlawful and caused irreparable harm. Dkt. No. 96 at 2. As I noted in my September 3 Order, the reasonable cause prong is extremely deferential to the NLRB and requires that I draw inferences in favor of the labor board. September 3 Order at 9. In addition, I must consider irreparable harm to the discharged workers, the parties injured by the unfair labor practice, not just to the union as Landis suggests. *Id.* at 10; *see Silverman v. Major League Baseball Player Relations Comm., Inc.,* 880 F.Supp. 246, 255 (S.D.N.Y.1995). Irreparable harm is one of several factors I consider to determine whether injunctive relief is just and proper. *Id.* at 9–10. With that clarification in mind, I turn to Landis' specific reconsideration requests.

■■■ The company contends that a decision on affidavit evidence is inappropriate because the affidavits conflict on material facts. In support of its claim, Landis cites a portion of the underlying unfair labor practice hearings before the ALJ, even though those proceedings are incomplete. Dkt. No. 96 at 3. As I stated in my September 3 Order, it is inappropriate for me to rely on the ALJ proceedings because they are ongoing, and affidavit evidence permits me to have a more complete record. September 3 Order at 11–12. I agree that it would be

inappropriate for me to resolve disputed factual issues on the basis of affidavit evidence alone.[3] *See Doe v. New York Univ.,* 666 F.2d 761, 765 (2d Cir.1981). *See also Conveyer & Caster Corp. v. Cruzado,* 1994 WL 49694 *2 (W.D.N.Y.1994). However, as discussed more fully below, the affidavit evidence in the record presents no factual dispute that is material to my decision. Because the court's function in reviewing a Section 10(j) petition is "limited," the need for an evidentiary hearing will vary from case to case. *Fuchs v. Hood Indus., Inc.,* 590 F.2d 395, 397 (1st Cir.1979). In this case, an evidentiary hearing remains unnecessary.

■■■ Although Landis initially moved to strike affidavits of James J. Valenti, Dkt. No. 58, the company now relies on them to support its request for discovery materials relating to employee attendance at union organizing meetings and signed union authorization cards. Dkt. No. 96 at 4. While these materials may be tangentially relevant to demonstrating the chilling effect of alleged unfair labor practices, the issue of "chill" itself is only a small component to the relevant analysis, which also considers harm to injured workers, the public interest, preservation of the status quo, and the ability of the NLRB to issue a final remedy. Because I refuse to decide the merits of the unfair labor practice charges before the ALJ, I continue to find that the discovery Landis requests is overbroad.

■■■ Finally, Landis makes the incredible assertion that it never has had the opportunity to address the merits of the NLRB's request for injunctive relief and should be permitted to file additional legal memoranda. In addition to the extensive oral argument I heard on the merits on November 29, 1996, I have received the following materials from Landis containing legal arguments: Respondent's Response Memorandum filed 11/20/96,

---

**2.** Landis failed to file a notice of motion and filed its motion for reconsideration more than 10 days after entry of the September 3 Order. *See* L.R. 7.1(g).

**3.** Ironically, Landis submitted affidavits containing credibility determinations. For example, the company submitted an affidavit from hired inves-

tigator James F. Savage, Jr., who recounted his interview with affiant William Robinson, Jr., reported Robinson's answers to interview questions, and then offered his view as to why Robinson was lying. *See* Savage Aff., Dkt. No. 118, at ¶ 4; *see also* Robinson Aff., Dkt. No. 73, Ex. B.

Dkt. No. 15; Respondent's Views (memorandum) filed August 15, 1997, Dkt. No. 67; Respondent's Motion filed 9/17/97, Dkt. No. 96; Letter of Joel H. Kaplan of 9/25/97, Dkt. No. 132; and Letter of Richard B. Lapp of 10/2/97, Dkt. No. 142. Landis argues that it requires an additional opportunity to address the public policy ramifications of reinstating Kathy Saumier because the company alleges that she sexually harassed male co-workers. As discussed more fully below, I decline Landis' invitation to convert this Section 10(j) proceeding into a sexual discrimination lawsuit, just as I decline to decide the merits of the unfair labor practice charges. I have provided Landis with ample opportunity to fill the record with evidence and argument in support of its position, including supplemental letters filed without prior court permission and various surreplies. For the foregoing reasons, I deny Landis' motion to reconsider portions of the September 3 Order.

## II. Appearance of union counsel

### A. Background

On November 25, 1996, attorney Mairead E. Connor filed a notice of appearance in this matter on behalf of the United Steelworkers union. Dkt. No. 16. Since that time, the union has participated in this litigation. Nearly a year later, on September 23, 1997, Landis filed a motion to strike the appearance of counsel because the union is not a party and has no intervention rights. Dkt. No. 128. Respondent also argued that Section 10(j) prohibits the union's participation in this litigation. Both the NLRB and the union responded to the motion.[4]

### B. Analysis

■ The union and NLRB concede that the United Steelworkers has no right to intervene in these proceedings pursuant to Fed.R.Civ.P. 24. Dkt. No. 145 at 1; Dkt. No. 144 at 1; Dkt. No. 156 at 6 n. 4. Rather, they request that I grant United Steelworkers permission to appear as amicus curiae.

4. United Steelworkers on October 8, 1997, brought an order to show cause application requesting leave to appear as amicus curiae. Rather than entertain a separate order to show cause

All parties agree that I have broad discretion to permit or deny an appearance as amicus curiae. *James Square Nursing Home, Inc. v. Wing,* 897 F.Supp. 682, 683 n. 2 (N.D.N.Y. 1995), *aff'd,* 84 F.3d 591 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 360, 136 L.Ed.2d 252 (1996); *United States v. Ahmed,* 788 F.Supp. 196, 198 n. 1 (S.D.N.Y.1992). Landis contends that I should deny the appearance because (1) United Steelworkers seeks to be an active participant and is interested in the specific controversy rather than general legal issues; (2) Section 10(j) prohibits union participation in the injunction proceedings; and (3) the NLRB adequately can represent itself without the union's assistance. Dkt. No. 128.

■ I must determine whether the union's appearance will aid me in the determination of the issues before me, and the union's participation is not precluded by the fact that it has an interest in the outcome and is not a completely neutral actor. *James Square,* 897 F.Supp. at 683 n. 2. Based on the submissions in the record, I find that participation by United Steelworkers is helpful to the court and is not so colored by a vested interest as to be biased or counter-productive. With respect to Landis' second argument, I do not read Section 10(j) so narrowly. The absence of a right to intervene pursuant to that section does not preclude the union's more limited involvement as amicus curiae. The Wisconsin district court case Landis cites in support of its position held that a union may not bring a petition or intervene in a proceeding pursuant to Section 10(j). *Wilson v. Liberty Homes, Inc.,* 500 F.Supp. 1120, 1123–24 (W.D.Wis.1980), *vacated in part,* 673 F.2d 1333 (7th Cir.1981). Because I do not believe that the Wisconsin district court in *Wilson* even considered the issue of a union's amicus curiae participation, I decline to extend that court's inference that "it is the intent of Congress to exclude charging parties such as the union from any form of participation in § 10(j) actions [because] § 10(*l*) (pertaining to temporary injunctive

application, I directed the union to file its memorandum in connection with Landis' pending motion. Dkt. No. 150.

relief in cases involving boycotts or strikes) expressly provides for such participation." *Id.* at 1124. The participation that United Steelworkers seeks is qualitatively different from that considered in *Wilson.* Finally, I find that although the NLRB · is well equipped to litigate its petition, the union adds a legal and factual perspective that is helpful to the court.

I therefore deny Landis' motion to strike the appearance of counsel for United Steelworkers and grant the union permission to appear in this matter as amicus curiae. The union is permitted to file memoranda and evidentiary affidavits and to participate in any future oral arguments.

### III. Section 10(j) petition for injunctive relief

#### A. Background

After an unsuccessful attempt to settle this litigation, the NLRB filed an amended petition for injunctive relief on September 10, 1997. That petition seeks several categories of injunctive relief, which determine the structure for my analysis and decision. First, petitioner seeks an injunction prohibiting Landis from interfering with employees' organizing rights pursuant to Section 7 of the NLRA, 29 U.S.C. § 157, and discriminating among employees on the basis of their organizing activities or sympathies or their participation in NLRB administrative proceedings, all pursuant to Section 8(a)(1), (3) and (4) of the NLRA, 29 U.S.C. § 158(a)(1), (3) and (4). The amended petition includes a detailed list of unfair labor practices from which the NLRB seeks to restrain Landis. Dkt. No. 72 at 20–23.

Second, petitioner seeks three categories of personnel actions. The NLRB requests court-ordered interim reinstatement of the former Landis employees Kathy Saumier and Clara Sullivan. *Id.* at 23. Next, petitioner seeks interim rescission of disciplinary notices and warnings given to employees allegedly in retaliation for their organizing efforts or union sympathies. *Id.* at 24. Finally, the NLRB seeks interim promotion of employees

Kenneth Houck and Em Ho. *Id.* at 24. As noted above, I permitted the parties to file affidavit evidence in support of their positions, and I have reviewed carefully the 94 docketed affidavits, many of which contain several successive affidavits.

#### B. Analysis.

■■■■ For the sake of convenience, I again state the legal standard governing my analysis. First, after giving the NLRB the benefit of the doubt regarding any disputed issues of fact, I must determine whether there is reasonable cause to believe that a Court of Appeals will enforce an NLRB decision finding an unfair labor practice. September 3 Order at 9 (*citing Kaynard v. Mego Corp.,* 633 F.2d 1026, 1033 (2d Cir.1980) and *Seeler v. Trading Port, Inc.,* 517 F.2d 33, 36–37 (2d Cir.1975)). Second, I must decide whether injunctive relief is just and proper under general equitable principles, and I may consider (1) prevention of irreparable injury to the party injured by the unfair labor practice; (2) restoration or preservation of the status quo as it existed prior to the unfair labor practice; (3) protection of the NLRB's ability to issue a final remedy; or (4) protection of the public interest in the collective bargaining process. September 3 Order at 9–10 (*citing Major League,* 880 F.Supp. at 255).

#### 1. General workplace practices

■■■■ After carefully reviewing the extensive affidavit evidence, I find reasonable cause to believe that Landis committed the unfair labor practices of which the NLRB complains.[5] The vast majority of the allegations contained in affidavits from Landis employees are uncontroverted. In my deference to the NLRB, I need not determine the truth of these allegations. However, even where respondent supplies a denial, that denial is incomplete or contained in the affidavits of supervisors rather than employees subject to the organizing campaign.

For example, Landis plant manager Stephen Ellis submitted an affidavit in which he stated that company officials "repeated to all

---

**5.** I emphasize, however, that the ALJ in the underlying administrative proceedings ultimately will determine the merits of the unfair labor practice charges against Landis.

our employees the Company's policy that authorizes employees to solicit support and distribute literature about the Union on Company property in non-work areas during breaks, lunch periods and before or after work." Ellis Aff., Dkt. No. 103, ¶ 6. In addition, Landis submitted the affidavit of maintenance worker Marilyn Payton, who stated that Landis imposes a "complete ban" on the distribution of both pro- and anti-union literature in work areas, including locker rooms. Payton Aff., Dkt. No. 107, ¶ 4. However, neither affidavit contradicts the detailed and largely consistent accounts that Landis employees supplied regarding the company's practice of permitting anti-union or non-work solicitations in work areas. *See* Caram Aff. No. 2 of 5/16/97, Dkt. No. 75, ¶¶ 2–9; Houck Aff. of 5/6/97, Dkt. No. 76, at 37; Murphy Aff. of 5/6/97, Dkt. No. 84, at 1–3; K. Saumier Aff. of 5/6/97, Dkt. No. 87, ¶¶ 2–4. Landis employees uniformly stated that pro-union literature was thrown away or removed from employee break rooms and other areas of the plant while other written materials, including anti-union leaflets, were not. *See* Houck Aff. of 5/6/97, Dkt. No. 76, at 34–37; Bentley Aff. of 5/14/97, Dkt. No. 77, ¶ 2; Frankel Aff. of 5/6/97, Dkt. No. 82, ¶ 11; Murphy Aff. of 5/6/97, Dkt. No. 84, at 1–2; Ho Aff. of 5/6/97, Dkt. No. 86, ¶¶ 6–8; K. Saumier Aff. of 5/6/97, Dkt. No. 87, ¶ 3; Martin Aff. of 5/6/97, Dkt. No.91, ¶¶ 6–7. The NLRB provided similar affidavit evidence in support of each of the unfair labor practices it alleges in its petition and thus established reasonable cause.

 In addition, I find that injunctive relief relating to the workplace practices is just and proper. All four of the *Major League* factors support requiring Landis to cease its labor law violations. Although Section 10(j) injunctions do not require an explicit balancing test, Landis can claim little or no harm from being ordered to simply comply with existing labor law and to permit its employees to exercise their organizing rights under Section 7 of the NLRA. *See Silverman v. Red & Tan Charters, Inc.,* 1993 WL 404146 *3 (S.D.N.Y.1993) (holding that granting Section 10(j) injunction "should cause no undue harm to Respondent [be-

cause] the Court's Order ... in the main simply restrains the Company from continuing to commit unfair labor practices"), *reconsideration granted in part,* 1993 WL 498062 (S.D.N.Y.1993). An injunction simply will maintain the status quo at Landis until the ALJ proceedings are complete and the NLRB can, if necessary, issue a final remedial order.

None of the employer practices of which the NLRB complains is on the margins of established law, and they instead constitute recognized unfair labor practices. *See, e.g., NLRB v. J. Coty Messenger Serv.,* 763 F.2d 92, 96–97 (2d Cir.1985) (employer violates NLRA where it grants or promises benefits to discourage employees' support for union, threatens discipline or discharge of employees for engaging in organizing activities, or interrogates employees about union activities); *NLRB v. Jamaica Towing, Inc.,* 632 F.2d 208, 212–14 (2d Cir.1980) (holding that "hallmark" violations of NLRA "include such employer misbehavior as the closing of a plant or threats of plant closure or loss of employment, the grant of benefits to employees, or the reassignment, demotion or discharge of union adherents" and lesser violations "include such employer misconduct as interrogating employees regarding their union sympathies, holding out a 'carrot' of promised benefits, expressing anti-union resolve, threatening that unionization will result in decreased benefits, or suggesting that physical force might be used to exclude the union"). Therefore, the continued existence of these unfair practices irreparably injures Landis workers, and an injunction will protect the public interest in a fair collective bargaining process.

Landis claims that injunctive relief is improper absent proof that alleged unfair labor practices had a chilling effect on union organizing efforts. The cases upon which Landis relies, decided in the Third and Seventh Circuit Courts of Appeals, do not hold that chill is the ultimate test of proper injunctive relief. *Szabo v. P*I*E Nationwide, Inc.,* 878 F.2d 207, 210 (7th Cir.1989); *Eisenberg v. Lenape Prods., Inc.,* 781 F.2d 999, 1005 (3d Cir.1986).

**182**

Rather, it is one factor I may consider.[6]

In any event, the NLRB presented specific evidence of a chilling effect among pro-union employees. Several Landis employees submitted affidavits in which they stated that they wore anti-union hats or shirts or failed to express their pro-union sentiments because they were afraid that Landis management would fire them. *See, e.g.,* Gilbert Aff. of 5/28/96, Dkt. No. 33, ¶ 5; Houck Aff. of 9/10/97, Dkt. No. 76, ¶¶ 2–3; T. Saumier Aff. of 5/23/97, Dkt. No. 93, ¶ 4. Although Landis filed several affidavits in which employees state that the number of workers wearing pro-union hats or shirts has not changed over time, I need not decide whether a so-called "chill" has taken place because petitioner demonstrated that the Section 10(j) injunction is a just and proper mechanism to protect the NLRB's ability to issue a final remedy and protect the public interest in a collective bargaining process free of employer intimidation.[7]

The NLRB's evidence in this case stands in stark contrast to the NLRB speculation that the Seventh Circuit criticized. *See Szabo,* 878 F.2d at 210. In addition, the undisputed facts of this case are distinct from those of *Lenape Prods.,* where "[t]here [was] no evidence that management was aware of the employees' embryonic efforts to unionize" and thus no evidence that the employer acted with an anti-union intent. *Lenape Prods.,* 781 F.2d at 1005. The Third Circuit held that this fact was most important to its conclusion that the employer's action would not discourage other employees from engaging in concerted activity pending resolution of NLRB proceedings. *Id.* The case before me is different because there is uncontroverted evidence that Landis management not only is keenly aware of union organizing efforts but also has taken affirmative steps to address the campaign, such as distributing anti-union hats and shirts to employees and conducting meetings with employees. *See, e.g.,* Martin Aff. of 6/11/96, Dkt. No. 36, ¶¶ 2–6. Therefore, I grant petitioner's request for relief as described in the amended petition. *See* Dkt. No. 72 at 20–23.

### 2. Requested personnel actions

■ As noted above, the NLRB in its petition seeks several types of relief with respect to specific Landis personnel actions. Most generally, the NLRB seeks interim rescission of "any personnel notices of allegedly unlawful discipline and warnings given to employees which are alleged herein as unlawful." Dkt. No. 72 at 24. The NLRB supplied affidavit evidence detailing specific instances in which Landis employees received discipline because of their pro-union activities. *See, e.g.,* Barlow Aff. of 4/24/96, Dkt. No. 25, ¶¶ 7–8; Murphy Aff. of 9/5/96, Dkt. No. 43, ¶¶ 3–5, 8, 10; LaFountain Aff. of 12/3/96, Dkt. No. 85, at 2–3; Barras Aff. of 12/18/96, Dkt. No. 94, ¶¶ 3–5. Respondent did not specifically controvert this evidence. I find that there is reasonable cause to believe that the Second Circuit would enforce a Board finding that these instances of discriminatory discipline took place. I also find that injunctive relief prohibiting Landis from relying on the specific instances of discipline alleged in the petition is just and proper. The remedy restores the status quo pending resolution of the charges before the ALJ below and merely prevents Landis from acting based upon the suspect disciplinary points. Therefore, I grant the NLRB's request for relief in ¶ 2(b) at page 24 of its amended petition. Dkt. No. 72.

■ Next, petitioner seeks interim promotions for Kenneth Houck and Em Ho, two vocal union supporters. Dkt. No. 72 at 24 (¶ 2(c)). Both Houck and Ho claim that they did not receive promotions to which they were entitled because of their organizing ac-

---

6. Respondent also cited a case regarding injunctive relief in the context of the irreparable harm of any chill on free speech. *See Blum v. Schlegel,* 830 F.Supp. 712, 723–24 (W.D.N.Y.1993), *aff'd,* 18 F.3d 1005 (2d Cir.1994). This First Amendment case is inapplicable to a Section 10(j) proceeding.

7. I decline to consider the affidavit of counsel for Landis, Richard B. Lapp, on the issue of chill because Lapp is not a fact witness and merely attempts to inject excerpts of testimony from the underlying proceedings before the ALJ. Lapp Aff., Dkt. No. 99, ¶¶ 3–6. I repeatedly have declined to rely on the incomplete proceedings before the ALJ in reaching my decision on the NLRB's Section 10(j) petition.

tivity. Houck Aff. of 5/6/97, Dkt. No. 76, at 19–25; Ho Aff. of 2/26/97, Dkt. No. 86, ¶¶ 4–11. Landis disputes this evidence, noting that management awarded each promotion based on a scoring system that considers attendance, seniority and "performance reminder points." McClelland Aff. of 9/19/97, Dkt. No. 120, ¶ 5(a). Landis supplied the bid notice, ranking sheet and bid award for the positions Ho and Houck sought. *Id.* Exs. A & B.

Unlike the alleged unfair practices I previously examined, I cannot find reasonable cause to believe that Landis refused to promote Houck or Ho because of their union organizing activities. Even giving the NLRB the benefit of the doubt, neither worker's affidavit provides sufficient facts from which to draw a causal inference of discrimination. For example, Ho does not dispute that Landis told her about the scoring system it used to award the position she sought, although she does dispute the validity of some of the underlying "performance reminder points." Ho Aff. of 5/6/97, Dkt. No. 86, ¶ 4. In addition, Houck does not dispute that the person who received a print technician position over him may have had more seniority. Houck Aff. of 5/6/97, Dkt. No. 76, at 20–21. Houck did not formally apply for a print technician position in April 1997, although he did express interest in it. *Id.* at 23–25. These deficiencies, coupled with direct contravention from Landis' human resources manager, prevent me from finding reasonable cause. I do not reach the second issue of whether injunctive relief would be just and proper. I therefore deny the NLRB's request for an order providing the interim promotions.

Finally, the NLRB seeks interim reinstatement of employees Kathy Saumier and Clara Sullivan. Dkt. No. 72 at 23. There is no dispute that both Saumier and Sullivan supported the United Steelworkers' organizing efforts, and Saumier was a particularly vocal and visible prounion presence among Landis workers. Landis discharged Sullivan on March 12, 1997, for allegedly calling a co-

worker "nigger" and touching him in a sexually suggestive manner.[8] McClelland Aff. of 9/19/97, Dkt. No. 120, ¶ 5(c); Sullivan Aff. of 3/18/97, Dkt. No. 88, ¶¶ 11–13. Landis terminated Saumier on February 10, 1997, for allegedly sexually harassing male co-workers. Landis submitted extensive evidence in an effort to substantiate the legitimate bases for these terminations. Both Sullivan and Saumier denied the misconduct charges and claim that Landis retaliated against them because of their union organizing efforts. Sullivan Aff. of 3/18/97, Dkt. No. 88, ¶ 13; Saumier Aff. of 2/14/97, Dkt. No. 87; Saumier Aff. of 10/1/97, Dkt. No. 134.

 An unfair labor practice occurs where an employer enforces facially neutral policies in a discriminatory manner against pro-union employees. *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1052 (2d Cir. 1980). There is reasonable cause to believe that a discriminatory discharge has taken place where an employer exhibits a "pattern of past acquiescence" regarding certain employees' behavior but then discharges a pro-union employee for the same behavior after an organizing drive has begun. *Id.* An employer's anti-union animus as exhibited in various unfair labor practices such as employee interrogation and promises of extra benefits in order to stave off a union also is a factor leading to the conclusion that a discharge was discriminatory. *See J. Coty Messenger Serv.*, 763 F.2d at 98–99. However, the employer retains the right to discharge employees for "poor performance, insubordination, or any other legitimate reason, even if the employee is engaged in some form of union activity at the time." *Dunbar v. Northern Lights Enters.*, 942 F.Supp. 138, 145 (W.D.N.Y.1996).

 The affidavit evidence before me presents factual disputes regarding whether Saumier or Sullivan actually engaged in the alleged misconduct. I do not resolve those disputes here and even assume for the purposes of these proceedings that the two employees engaged in the misconduct. The ALJ in the administrative proceedings below

---

**8.** Sullivan worked at Landis on assignment from Express Temporary Services. McClelland Aff. of 9/19/97, Dkt. No. 120, ¶ 5(c). The NLRB's amended petition alleges, among other things, that the temporary employment agency is an agent of respondent. Dkt. No. 72 ¶ 20(e).

will make the ultimate determination on the merits of the unlawful discharge claims, and I decline to intrude upon his role. Nonetheless, I find reasonable cause to believe that Landis terminated Saumier and Sullivan for illegitimate reasons rather than for harassment. I rely upon two relevant factors. First, the NLRB clearly has established an anti-union animus among managers at Landis by virtue of the many unfair labor practices that are the subject of this petition. As noted above, respondent did little to controvert the NLRB's allegations, which found support in many employee affidavits.

Second, I find that prior to the union organizing effort, Landis exhibited a pattern of past acquiescence with respect to workplace harassment. For example, Richard Bentley stated that co-workers referred to him as "Buckwheat" and "nigger" and were not punished. Bentley Aff. of 5/14/97, Dkt. No. 77, ¶¶ 3–7, Bentley Aff. of 4/21/97, Dkt. No. 77, ¶¶ 2–4. Respondent alluded to an investigation of this complaint but provided no documentation in support of it. McClelland Aff. of 9/19/97, Dkt. No. 120, ¶ 5(d). Landis workers reported many incidents of sexual harassment that went unpunished at the plant. *See* Andrew Aff. of 2/12/97, Dkt. No. 78, ¶ 5; Brown Aff. of 4/2/97, Dkt. No. 79, ¶¶ 2–6; DeFuria Aff. of 2/13/97, Dkt. No. 81, ¶¶ 7–9; Ho Aff. of 6/2/97, Dkt. No. 86, ¶¶ 2–4; Baker Aff. of 2/13/97, Dkt. No. 89, ¶¶ 2–5. Ironically, Landis fired Bentley, a prounion employee, for sexual harassment, but the company does not claim to have discharged any of the workers or supervisors who are subjects of the above complaints. McClelland Aff. of 9/19/97, Dkt. No. 120, ¶ 5(d); *see also* Russell Aff. of 9/18/97, Dkt. No. 119, ¶ 6. Assistant Landis human resources manager Russell submitted the conclusory claim that the company handles sexual harassment complaints "in a consistent manner, according to the Company's policy," and she attached a copy of the non-harassment policy.[9] Russell Aff. of 9/18/97, Dkt. No. 119, ¶ 6. However, this conclusory denial fails to address the concerns raised in the very specific employee

affidavits. On the reasonable cause prong of my analysis, I resolve all doubts in favor of the NLRB, and I conclude that Landis tolerated workplace harassment prior to the union organizing drive. The evidence in the record belies Landis' assertion that it took action against Sullivan and Saumier pursuant to a neutral policy.

■ I also find that reinstatement of Saumier and Sullivan is just and proper interim relief because "both employees … were active and open union supporters," and "[t]heir discharges therefore risked a serious adverse impact on employee interest in unionization." *Palby Lingerie*, 625 F.2d at 1053. *See also Roth v. American Property Rights Ass'n Fuel Oil Buyers Group, Inc.*, 795 F.Supp. 577, 600 (E.D.N.Y.1992) (holding that "[w]here the Regional Director has established reasonable cause to believe that employees were discriminatorily discharged in violation of § 8(a)(3) of the Act, interim reinstatement and cease and desist orders have been consistently upheld as 'just and proper'"); *Aguayo v. Tomco Carburetor Co.*, 853 F.2d 744, 749 (9th Cir.1988) (holding that "it was an abuse of discretion for the [district] court to conclude that reinstatement of employees discharged for union organizing activities was not just and proper").

Landis argues strenuously that interim reinstatement is neither just nor proper because of the egregious conduct Sullivan and Saumier are alleged to have committed. I disagree. The cases upon which Landis relies are inapposite. In a decision regarding enforcement of an NLRB order, a procedural posture vastly different from the preliminary stage of this Section 10(j) petition, the Second Circuit remanded an order reinstating two suspected thieves as security guards because the record did not resolve whether the employees engaged in the thefts. *KBI Sec. Serv., Inc. v. NLRB*, 91 F.3d 291, 296 (2d Cir.1996). The court declined to decide whether "reinstatement of a thief to a position with a security company" is a permissible remedy. *Id.* In another Second Circuit

9. The non-harassment policy purports to protect employees from harassment based on sexual orientation. *Id.* Ex. A. However, two Landis employees claim the company's response to their

complaints in this area was at best ineffective. Ho Aff. of 2/26/97, Dkt. No. 86, ¶¶ 3, 6; Houck Aff. of 2/24/ 97, Dkt. No. 76, ¶¶ 3–16.

case, the court held that enforcing an arbitrator's award reinstating an employee the arbitrator had found guilty of workplace sexual harassment was against public policy. *Newsday, Inc. v. Long Island Typographical Union, No. 915*, 915 F.2d 840, 845 (2d Cir.1990). *Newsday* does not prohibit the reinstatement of either Saumier or Sullivan because in that case a finder of fact had decided the merits of the sexual harassment charge, the employee was not also the subject of discrimination based on his union activity, and the employee had received a previous warning about the serious consequences of his harassing behavior. *Id.* at 843, 845.

In addition, Landis devoted considerable effort to showing that the discharges had no chilling effect among remaining Landis employees and the union organizing effort. The NRLB submitted affidavit evidence to the contrary. I do not resolve this factual dispute. As noted above, the issue of "chill" is only one portion of my analysis, and the factors of injury to Saumier and Sullivan, restoration of the status quo, protection of the NLRB's ability to issue a final remedy, and the public interest in a fair bargaining process all support interim reinstatement. Given the uncontroverted evidence of prior instances of harassment that Landis tolerated, it is disingenuous for the company now to argue that the presence of Sullivan and Saumier in the workplace effects an injury to public policy and the morale and working conditions of fellow employees. Finally, I do not consider Landis' argument that Saumier's interim reinstatement would cause the company injury because it misapprehends the correct legal standard, which considers irreparable injury to the person subjected to an unfair labor practice. *See* Russell Aff. of 9/18/97, Dkt. No. 119, ¶ 8. I grant the NLRB's request for interim reinstatement of both Sullivan and Saumier.

## CONCLUSION

For the foregoing reasons, I DENY Landis' motion for reconsideration of my September 3 memorandum-decision and order. I DENY Landis' motion to strike the appearance of counsel for the United Steelworkers and direct that counsel appear in these proceedings as amicus curiae, although not as a party. I DENY the NLRB's request for an injunction ordering interim promotions for Landis employees Kenneth Houck and Em Ho. Finally, I GRANT the following injunctive relief to the NLRB pursuant to Section 10(j) of the NLRA:

1. Respondent, its officers, agents, representatives, servants, employees, attorneys, and all persons acting in concert or participation with them (collectively, "respondent"), are enjoined and restrained pending final disposition by the NLRB of the matters involved in the amended petition, from interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the NLRA; from discriminating in regard to hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization, in violation of Section 8(a)(1) and (3) of the NLRA; and from discriminating against its employees because they filed charges or gave testimony under the NLRA. This order incorporates the specific prohibitions listed in the amended petition, Dkt. No. 72, at 20–23, ¶ 1(a) through (a)(a).

2. Respondent is ordered to offer interim reinstatement to employees Kathy Saumier and Clara Sullivan to their former positions and working conditions, displacing, if necessary, any workers hired or reassigned to replace them, or, if their former positions no longer exist, to substantially equivalent positions.

3. Respondent is ordered to, on an interim basis, rescind and not use in any future disciplinary action, any personnel notices of the allegedly unlawful discipline and warnings given to employees which are alleged in the amended petition as unlawful and not rely upon the notices or warnings in any future discipline.

4. Respondent is ordered to post copies of this opinion and order at its facility where its notices to employees customarily are posted, and the posting shall be maintained during the duration of the NLRB's administrative proceedings, free from all obstructions and defacements, and agents of the NLRB shall be granted reasonable access to the

respondent's facility to monitor compliance with this posting requirement.

5. Respondent is ordered to, within twenty days of the filing of this order, file with the district court, with a copy submitted to petitioner, a sworn affidavit from a responsible official of respondent, setting forth with specificity the manner in which respondent has complied with the terms of this order.

IT IS SO ORDERED.